DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Timothy Graulich
James I. McClammy
Stephen D. Piraino (*pro hac vice* pending)

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | Case No. 20-11563(_) |
| Debtors.[1] | **(Joint Administration Pending)** |

**MOTION OF DEBTORS FOR AN ORDER AUTHORIZING (i) DEBTORS TO CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (ii) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Grupo Aeroméxico S.A.B. de C.V. ("**Grupo Aeroméxico**") and its affiliates that are

debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"; the

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

Debtors collectively with their direct and indirect non-Debtor subsidiaries, the "**Company**" or "**Aeroméxico**") hereby move (this "**Motion**") this Court (as defined herein) for entry of interim and final orders, substantially in the forms attached hereto as <u>**Exhibit A**</u> and <u>**Exhibit B**</u> (the "**Interim Order**" and the "**Final Order,**" respectively), granting the relief described below. In support thereof, the Debtors refer to the contemporaneously-filed *Declaration of Ricardo Javier Sánchez Baker in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Sánchez Declaration**") and further represent as follows:

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, the United States Trustee for the Southern District of New York

(the "**U.S. Trustee**") has not appointed a statutory committee of creditors in these chapter 11 cases, nor has the Court appointed a trustee or examiner therein.

3.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

4.      The Debtors and their direct and indirect subsidiaries constitute the largest airline in Mexico and are collectively known as Mexico's "global airline," providing public air carrier services for passengers and goods (including fleet and cargo services) in and outside of Mexico, and services related to such air operations. The Debtors are one of the four founding members of the SkyTeam airline alliance, and their businesses include Aeroméxico, Aeroméxico Connect, Aeroméxico Cargo and Aeroméxico Servicios. Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the Sánchez Declaration, filed contemporaneously herewith.

### **Relief Requested**

5.      By this Motion, and pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of the Interim Order and Final Order, substantially in the forms attached hereto, authorizing the Debtors to (a) continue to operate their prepetition cash management system with respect to intercompany cash management and obligations, including the continuation of the investment of their cash in accordance with their Investment Guidelines (as defined below), as further described below (the "**Cash Management System**"), (b) fund the operations of affiliates and subsidiaries, (c) maintain the Debtors' existing bank accounts including, but not limiting to, those opened within any

Mexican trust and under the name of any Mexican trustee acting as trustee of said trusts where the Debtors act as settlors and first or second beneficiaries (collectively and, together with any accounts opened after the Petition Date, the "**Bank Accounts**")[2] located at various banks and financial institutions (the "**Banks**") and (d) maintain the Debtors' existing business forms, in each case in the ordinary course of business and consistent with prepetition practice.   Without the requested relief, the Debtors would be unable to maintain their operations, which would cause grievous harm to the Debtors and their estates.   The Debtors further request that the Interim Order and the Final Order (a) authorize all Banks to receive, process, honor and pay any and all checks, drafts and other forms of payment, including fund transfers, on account of the Cash Management System, whether such checks or other requests were submitted before, on or after the Petition Date; (b) authorize the Banks to rely on the representations of the Debtors as to which checks and fund transfers are subject to this Motion, provided that no Bank shall have any liability to any party for relying on such representations; (c) prohibit the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of the Cash Management System; and (d) authorize the Debtors to issue new postpetition checks or effect new postpetition fund transfers to replace any checks, drafts and other forms of payment which may be dishonored or rejected

---

[2] Given the complexity of the Cash Management System and the approximately 128 of the Debtors' Bank Accounts (including, but not limiting to, certain bank accounts opened under the name of any Mexican trustee acting as trustee of any Mexican trust where any Debtor acts as settlors and first or second beneficiaries), this Motion describes the highlights of the Cash Management System and does not discuss every Bank Account. A non-exclusive list of the Debtors' Bank Accounts (with account numbers partly redacted) is attached hereto as **Exhibit C**. While this exhibit is intended to be a comprehensive schedule of the principal Bank Accounts, the Debtors, however, request relief applicable to all Bank Accounts, regardless of whether such Bank Account is specifically identified on **Exhibit C**.

and to reimburse any expenses that may be incurred as a result of any Bank's failure to honor a prepetition check or other form of payment.

## THE DEBTORS' CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS

6.      In the ordinary course of business, the Debtors use the Cash Management System to collect, concentrate and disburse funds generated by the Debtors' operations. The Cash Management System also enables the Debtors to perform cash reporting, monitor the collection and disbursement of funds and maintain control over intercompany obligations and the administration of the Bank Accounts. The Cash Management System is not entirely automated: certain activities such as monitoring the system, managing the proper collection and disbursement of funds, depositing checks and transferring monies to and from investment accounts, are performed manually by employees of the Debtors. The Debtors also use the Cash Management System to pay debt, pay and receive derivative margin calls and execute foreign exchange transactions.

7.      The Cash Management System has four main components: (a) cash collection,  (b) cash concentration, (c) cash disbursement and (d) investments. Because the Debtors' business generates revenue and expenses both within Mexico, the United States and around the world, the Cash Management System has both U.S. and international features. **Exhibit D** hereto is a chart that provides a general overview of the movement of cash through the Debtors' Cash Management System.

### A.      Cash Collection

8.      The Debtors generate and receive funds from a wide variety of sources, including (a) direct sales of passenger tickets, (b) direct sales of cargo and storage services, (c) collection of credit and debit card receivables (whenever not assigned as source of

payment of specific loans and claims), (iv) reimbursements from travel agents, (v) receipt of financing from private and public sources, (vi) sales of goods and services to other airlines, such as aircraft maintenance, fuel and ground support, (vii) receipts from charter operations and (viii) provision of ancillary services to passengers, (vix) dividends and intercompany debt from PLM Premier, S.A.P.I. de C.V. ("**PLM**") and (vx) receipts from other compensation mechanics include Bank Settlement Plan ("**BSP**"), IATA Currency Clearance Service ("**ICCS**") and Cargo Account Settlement Systems ("**CASS**") from Air Transport Association of America ("**IATA**").

9.     <u>Direct Sale of Passenger Tickets</u>.    The Debtors sell passenger tickets to customers directly at airport ticketing counters and city ticketing offices, and by telephone, mail and the Internet.  Passengers directly purchase tickets with cash, checks, money orders or other forms of payment, which the Debtors deposit in local Working Accounts (as defined herein) across Mexico and around the world (the "**Direct Sales**").

10.     In most of the non-Mexican countries in which the Debtors operate, the Debtors maintain at least two Deposit Accounts, one to collect United States Dollars and the other to collect local currency, depending on local regulations and currency restrictions.  The Debtors generally use their collected local currencies to pay local expenses, including local vendors, payroll, supplies, taxes and governmental fees. Anything remaining is converted into United States Dollars and repatriated to a U.S. Bank Account. The Debtors also generate, through local contractors and travel agents, revenue in countries where they do not fly ("**Offline Sales**").  Offline Sales are collected in local currencies or United States dollars. The Offline Sales are collected via the BSP, converted into United States Dollars and sent to a JP Morgan Chase Bank Account in the United States via the ICCS.

11.     <u>Direct Sale of Cargo and Freight-Forwarding Services</u>.    The Debtors provide cargo and storage services through the Debtor Aerovías Empresa de Cargo, S.A. de C.V. Funds received for storage and cargo services are deposited into multiple Bank Accounts at Santander, BBVA, Citibanamex, Citibank, Wells Fargo and JP Morgan Chase.

12.     <u>Credit and Debit Card Receivables</u>.    Many customers and entities that purchase goods and services from the Debtors use a credit or debit card to pay for them.  In these instances, the Debtors do not collect the funds directly from the customers but rather from the credit card companies or the banks and institutions that process the credit card transactions (collectively, the "**Credit Card Companies**"). The Debtors' three main debit and Credit Card Companies are American Express, MasterCard and Visa. When an individual or entity transacts business with the Debtors using a credit card, the Debtors create a credit card receivable (the "**Credit Card Receivable**").

13.     These Credit Card Receivables have been assigned in property to two different Mexican incorporated trusts, which act as "receivables factoring programs". Payments from the three main Credit Card Companies are received directly by each applicable trust and routed to each collection account of the applicable trust.[3] Each trust first satisfies trust expenses, replenishes the reserve accounts and makes any required interest and loan payments. Only the excess amounts are released back to the Debtors via Bank Accounts at BBVA, Citibanamex, Citibank and Santander.

14.     <u>Sales through Travel Agents</u>.  Travel agencies are the primary source of ticket distribution for the Debtors' flights. Indirect ticket sales by travel agencies, including online

---

[3] The Debtors reserve all of their rights in respect of the treatment and characterization of the trusts and their receivables from the Credit Card Companies.

travel agencies, accounted for sales of 59% of the Debtors purchased flight segments for the year ended December 31, 2019. The Debtors currently pay travel agencies a standard commission fee between 0.1% and 13%, depending on the geographic market and the type of cabin and have entered into agreements with certain travel agencies granting performance incentives between 1% and 8% based on volumes of ticket sales. Travel agencies obtain flight information from the airline and issue airline tickets through Global Distribution Systems ("**GDSs**"),[4] which allows them to make reservations on flights for many airlines. The Debtors actively participate in the most important GDSs, including SABRE, Amadeus, Galileo, Travelport and Travelsky.

15.    As consideration for accessing these systems, the Debtors pay an operating fee for each flight segment reserved through a GDS. As of December 31, 2019, there were approximately 32,207 travel agencies from 64 different countries to sell tickets for our flights, including online ticket agencies and sales agents generally in offline offices. As part of the Debtors' plan to simplify their distribution channels and reduce reservation fees, they have negotiated reductions in the rates paid to the GDSs in which they participate. As well, the Debtors often renegotiate with the different travel agents with whom we have incentive bonus agreements to reduce the incentive bonuses that they pay.

16.    Additionally, to a lesser extent, the Debtors' indirect ticket sales are carried out through wholesalers and tour operators who buy tickets with a volume discount and resell them to passengers.

---

[4] Global Distribution Systems, or GDSs, which are computerized network systems that enable transactions between travel industry service providers using real-time inventory

17.     The Debtors assigned the receivables from the travel agencies in favor of certain Mexican incorporated trust to assure the payment for a line of credit with Banco Bilbao Vizcaya Argentari.[5] These receivables flow through a separate trust and are only remitted to the Debtors once certain collateralization thresholds are met. Once remitted, these receipts flow through one of the Debtors' Bank Accounts at Citibank and Santander.

18.     <u>PLM</u>.  Aeroméxico spun off its airline loyalty program in 2010 to PLM, but remains the majority owner. Accordingly, PLM is the current operator of the Club Premier loyalty program. Aeroméxico receives dividends and has the ability to draw intercompany debt from PLM.

19.     <u>Financing</u>.  In 2020, the Debtors received funds from numerous financing sources, including, but not limited to, a 7.000% senior unsecured bond issuance due 2025; a $50 million direct loan provided by PLM; and the issuance of commercial paper (collectively, the "**Financings**").  All cash generated through the Financings was collected in the Debtors' Citi Concentration Account (as defined herein).

20.     Additional information about the Debtors' prepetition indebtedness and sources of funding can be found in the Sánchez Declaration, filed contemporaneously herewith.

21.     <u>Miscellaneous</u>.  The Debtors also receive funds from a variety of other sources such as from extra baggage, flight schedule changes, and other passenger charges. These funds are received periodically and transferred into multiple Bank Accounts.

---

[5] The Debtors reserve all of their rights in respect of the treatment and characterization of the trusts and their receivables from the travel agencies.

### B.    Cash Concentration

22.    The majority of the Debtors' receipts are deposited directly into the Debtors' two concentration accounts (the "**Concentration Accounts**") with Citibank, N.A. ("**Citi Concentration Account**") and Banco Bilbao Vizcaya Argentaria ("**BBVA Concentration Account**"). The Citi Concentration Account is a USD account while the BBVA Concentration Account is a Mexican Peso account.

23.    Additionally, the Debtors maintain 81 working accounts with 25 Banks (the "**Working Accounts**") in which miscellaneous receipts are deposited from time to time. Funds in the Working Accounts are  manually swept into the Concentration Accounts as needed.

24.    As of the Petition Date, the balance of unrestricted cash in all of the Debtors' accounts is approximately $159.3 million.

### C.    Cash Disbursements

25.    The Debtors use receipts concentrated in the Concentration Accounts to satisfy their financial obligations on account of operating expenses, interest, taxes and regulatory fees, utilities and payments due to other vendors.

26.    Disbursements are paid by wire, check or ACH Transfer or auto-debited out of one of the Concentration Accounts or the Working Accounts. In addition, if a Debtor's Working Account is at a deficit or additional funding is otherwise required, the Concentration Accounts will fund the Working Account in an amount appropriate to remove the deficit. The Debtors fund payroll obligations through disbursements out of the Working Accounts and in some countries via a transfer made to a payroll third party processor. The Debtors

fund flexible spending accounts and other benefits payments through disbursements out of the Concentration Accounts.

27.    <u>Payroll</u>.    The Debtors maintain a number of Bank Accounts to administer payroll payments for Aeroméxico and its subsidiaries. Mexican employees are paid directly by the company while employees based elsewhere are paid by third party payroll processors, such as Automatic Data Processing, Inc. ("**ADP**").

28.    <u>Corporate Payables</u>.    In the operation of their business, the Debtors incur certain recurring obligations within Mexico to vendors, suppliers, landlords, lessors, governmental agencies and other entities. These obligations are generally paid via wire payments, automated clearing house ("**ACH**") payments and check payments, through Working Accounts held by Aeroméxico or an Aeroméxico subsidiary. In addition, wire payments for corporate payables are made from the Concentration Accounts. Similar foreign corporate payables are paid from local Working Accounts.

29.    <u>Clearinghouse Settlements</u>.    Most major airlines participate in interline agreements with other airlines, pursuant to which the airlines agree to accept each other's tickets for transportation on one another's airlines or in which one airline provides services (*e.g.*, ground handling) to another airline. The mutual payment obligations that arise under interline agreements are settled and adjusted through the IATA Clearinghouse (the "**ICH**") and the Airlines Clearing House, Inc. (the "**ACH**," and together with the ICH, the "**Clearinghouses**"). These Clearinghouses aggregate the amounts monthly invoiced by other airlines to the Debtors, and by the Debtors to other airlines, and calculates a net balance. The Debtors utilize Citibank accounts for Clearinghouse settlement. These Clearinghouse

accounts are funded by wire transfer from the Concentration Accounts as necessary to settle a net payable position.

30.    <u>Derivative Contracts</u>.  The Debtors' businesses are sensitive to fluctuations in jet fuel prices, interest rates and other prices and rates. The Debtors use Derivative Contracts (as defined in the Debtors' Derivative Contracts Motion)[6] in order to reduce the risks associated with some of these fluctuations. While these Derivative Contracts can be either a source or use of cash, they are meant to offset risks for other parts of the business. For example, a loss from a Derivative Contract due to falling fuel prices, may be offset by gains in the Debtors' operations. The Debtors' use of Derivative Contracts is more fully discussed in the Debtors' Derivative Contracts Motion.

**D.    Investments**

31.    The Debtors invest their funds according to the procedures set forth in the Debtors' investment guidelines (the "**Investment Guidelines**") for the purpose of earning the maximum return while considering the safety of the investment.

32.    Funds to be invested are transferred from the Concentration Accounts to certain accounts (the "**Investment Accounts**") that hold Treasuries or interests in money market funds that primarily invest in Treasuries, or interest-bearing Bank Accounts.

33.    Under the Investment Guidelines, the Debtors may only invest in: instruments with maturities of no more than five years. In the event that these are greater than one year, the established rate must be a variable, with the exception of structured notes, whose rate will depend on the structure of the operation and may be fixed or variable without exceeding

---

[6] The Debtors' Derivative Contracts Motion is being contemporaneously filed herewith.

-12-

the maximum term of five years to maturity. Any investment with maturity greater than five years or in variable income instruments must be previously approved by the corresponding Directors and / or Corporate Governance Bodies of the relevant Debtor. All investments in Mexican pesos and / or United States dollars may be made in the instruments listed below, subject to "Investment Grade" ratings in Mexico or in the United States according to Annex A.

- Instruments issued by the Mexican government (in Mexican pesos, United States dollars or Euros), or by the United States government (in United States dollars) up to 100% of the total portfolio exposure on the day of investment.

- Investment grade banking instruments (see Annex A), up to 50% of the total portfolio exposure on the day of investment.

- Instruments issued by corporate and / or commercial paper, rated "Investment Grade" (see Annex A) up to 40% of the total portfolio exposure on the day of investment; as long as, no more than 15% of the issuance is acquired, and the holding per issuer does not exceed more than 20% of the total portfolio.

- Structured notes with 100% capital guarantee, up to 30% of the total portfolio exposure on the day of investment.

- Repo instruments assessing bank risk (see Annex A) up to 100% of the total portfolio exposure on the day of investment.

- Any other instrument explicitly approved by the corresponding Directors and / or Corporate Governance Bodies.

34.     As of the Petition Date, the debtors had $1,300 in investment accounts.

**Debtor and non-Debtor Intercompany Transactions**

35.    In the ordinary course of their business, the Debtors and their non-Debtor affiliates utilize the Cash Management System and otherwise engage in intercompany transactions between themselves (collectively, the "**Intercompany Transactions**"). Such Intercompany Transactions may result in the creation of intercompany receivables and payables among the Debtors and non-Debtors, as applicable (the "**Intercompany Claims**"), which would be reflected in their respective accounting systems. The non-Debtor affiliates greatly enhance the value of the Debtors' estates, but could not function properly without being able to partake in Intercompany Transactions with the Debtors. Important categories of Intercompany Transactions include, without limitation, transactions related to the operation of the Club Premier loyalty program by PLM and critical operations services.

36.    If the Debtors are not permitted to engage in Intercompany Transactions with Debtors and non-Debtors alike, the Debtors' operations, the Cash Management System and the execution of the chapter 11 cases would be disrupted, to the loss of the Debtors' estates and the creditors. Thus, the Debtors seek the authority, but not direction, to continue the Intercompany Transactions in the ordinary course of business. In order to ensure that individual Debtors will not be disadvantaged by funding costs allocable to another Debtor, the Debtors request, pursuant to Bankruptcy Code section 503(b)(1) and 364(b), that the Court grant administrative expense status to all postpetition Intercompany Claims, including claims arising from Intercompany Transactions provided by non-Debtors to the Debtors.

E.    **Corporate Card Programs**

37.    In the ordinary course of business and as part of the Cash Management System, the Debtors utilize company credit cards (collectively, the "**Corporate Cards**") for

various work-related expenses (collectively, the "**Corporate Card Programs**"). American Express and Citibanamex (the "**Corporate Card Providers**") issue these Corporate Cards, and as of the Petition Date the company has approximately a hundred of them.

38.     Every month, the Debtors receive statements for purchases made (the "**Corporate Card Expenses**") from the cards, which are typically paid within 30 days from receipt. As of the Petition Date, any amounts due under these Corporate Card Programs will be *de minimis* due to the current economic environment.

39.     If the Debtors are not permitted to maintain their Corporate Card Programs, it would impose an unnecessary strain on the business operations of the Debtors. Additionally, the Debtors' inability to pay Corporate Card Expenses may impose great hardship on any employees who were issued Corporate Cards directly, as such employees may be held personally liable for such expenses despite the fact that they were incurred for the Debtors' benefit. Thus, the Debtors seek authority, but not direction, to continue to pay all prepetition and postpetition Corporate Card Expenses and maintain their Corporate Card Programs in the ordinary course of business.

**The Debtors' Existing Business Forms and Checks**

40.     In the ordinary course of business, the Debtors use sequentially numbered check stock with the Debtors' logo printed thereon. In addition, the Debtors maintain pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, purchase orders, invoices, sales order acknowledgments and other business forms (collectively, along with the Debtors' checks, the "**Business Forms**"). To minimize administrative expense and delay, the Debtors request authority to continue using their existing Business Forms, substantially in the forms existing immediately before the Petition Date, without reference to the Debtors' status as "Debtors in Possession."; *provided, that,* as

soon as reasonably practicable, the Debtors will cause any electronically generated Business

Forms to reflect "Debtors in Possession" and the chapter 11 case number.

## The Debtors Seek Authorization to Open and Close Bank Accounts

41.    Pursuant to this Motion, the Debtors also seek authorization to implement

changes to the Cash Management System in the ordinary course of business, including

opening any additional bank accounts, or closing any existing Bank Account as they may

deem necessary and appropriate.  The Debtors request that the Court authorize the Banks to

honor the Debtors' requests to open or close, as the case may be, such bank accounts or

additional bank accounts, provided, however, that, unless otherwise ordered by this Court,

any new bank account shall be with (a) a bank insured by the FDIC and that is organized

under the laws of the United States or any State therein, (b) a bank designated as an

Authorized Depository under the U.S. Trustee Guidelines or (c) any other bank, as the

Debtors may determine upon consultation with the U.S. Trustee.

42.    The Debtors further request that nothing contained in the order granting the

relief requested herein shall prevent Banks from modifying or terminating any Bank Accounts

or related services in accordance with the agreements governing such accounts or services.

## Basis for Relief

### A.    Continuing the Centralized Cash Management System Is in the Best Interests of the Debtors, Their Creditors and All Other Parties in Interest

43.    The Debtors hereby seek authority to continue using their current centralized,

integrated Cash Management System. Given the Debtors' operations, as well as the goal of

preserving and enhancing their respective going concern values, a successful reorganization

of the Debtors' businesses simply cannot be accomplished if there is substantial disruption

-16-

to the Cash Management System, including the intercompany transfers made thereunder. It is essential that the Debtors be permitted to continue to consolidate the management of their cash and transfer monies from entity to entity as necessary and appropriate to continue the operation of their businesses. If the Debtors were required to dismantle the Cash Management System, it would wreak havoc on their day-to-day operations and their accounting practices and impair the Debtors' ability to generate timely reports of transactions and balances.

44.    The widespread use of similar cash management systems is attributable to the numerous benefits they provide, including the ability to collect and apply receivables, pay operating expenses and other vendors, tightly control corporate funds, invest idle cash, ensure cash availability and reduce administrative expenses by facilitating the expeditious movement of funds and the development of timely and accurate account balance and presentment information. These controls are particularly important here, given the significant amount of cash that flows through the Cash Management System on an annual basis.

45.    In addition, it would be very time consuming, difficult and costly for the Debtors to establish an entirely new system of accounts and new cash management system, and doing so would disrupt the Debtors' relationships with their key customers and suppliers/vendors. The attendant delays from opening new accounts, revising cash management procedures and instructing customers to redirect payments would harm the Debtors' ability to operate their businesses while pursuing these arrangements. Under the circumstances, maintenance of the Cash Management System is essential and in the best interests of the Debtors' estates. Furthermore, preserving the "business as usual" atmosphere and avoiding the unnecessary and costly distractions that would inevitably be associated with

any substantial disruption in the Cash Management System will facilitate the Debtors' reorganization efforts.

46.    The Debtors will also maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases.  As a result, the Debtors will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest. As a part thereof, each Debtor will record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Postpetition Transfer**"). Any Debtor that makes a Postpetition Transfer to or for the benefit of another Debtor should be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code.

47.    Allowing the Debtors to utilize the prepetition Cash Management System is consistent with the applicable provisions of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business  without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997); *In re Enron Corp.*, 2003 Bankr. LEXIS 2111 (Bankr. S.D.N.Y. Mar. 21, 2003); *Chaney v. Official Comm. of Unsecured Creditors  of Crystal Apparel, Inc.* (*In re Crystal Apparel, Inc.*), 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co.*

*v. Amdura Corp.* (*In re Amdura Corp.*), 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, disbursement and investment of cash pursuant to their Cash Management System described above.

48.     To the extent that the Debtors' continued funding of non-Debtor affiliates is out of the ordinary course of business, it is justified by the unique facts and circumstances of this case. Among the Debtors' valuable assets are their equity interests in (and intercompany receivables from) their subsidiaries and affiliates. If the subsidiaries are not funded and cannot meet their obligations, there is a strong likelihood that they will decrease substantially in value, causing great harm to the Debtors, their estates, and their creditors. As such, it is in the best interests of the Debtors' estates for the Debtors to continue funding those subsidiaries they believe have value and the funding of which may benefit the Debtors' estates.

49.     Bankruptcy Code section 363(b)(1) empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." The debtor's decision to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge deciding a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

50.     The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

51.     The Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtors' Cash Management System without interruption is vital to the Debtors' survival of these chapter 11 cases. The Cash Management System is the complex mechanism whereby the Debtors are able to transfer their revenue toward the payment of their obligations and without which the Debtors' reorganization would fail. It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

-20-

52.     As noted, these procedures are similar to those employed by comparable corporate enterprises.  Moreover, the relief requested herein to maintain the Debtors' existing cash management system is routinely granted in chapter 11 cases by courts in this district. *See, e.g., In re LATAM Airlines Group S.A.*, Case No. 20-11254 (Bankr. S.D.N.Y. May 28, 2020) [Docket No. 49]; *In re Avianca Holdings S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y. May 11, 2020) [Docket No. 247]; *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 23, 2019) [Docket No. 253]; *Sears Holding Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 26, 2018) [Docket No. 1394]; *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 31, 2017) [Docket No. 341]; *In re BCBG Max Azria Glob. Holdings, LLC,* Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017 [Docket No. 245]); *In re Ultrapetrol (Bahamas) Ltd.*, Case No. 17-22168 (RDD) (Bankr. S.D.N.Y Mar. 8, 2017) [Docket No. 102].

### B.     Cause Exists to Approve the Debtors' Current Investment Guidelines

53.     Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case, and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires the estate to obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court, for cause, orders otherwise. 11 U.S.C. § 345(b)(2).

54.    The Debtors believe that their current Investment Guidelines provide the protection contemplated by section 345(b) of the Bankruptcy Code, notwithstanding the absence of a "corporate surety" requirement. The Investment Guidelines permit the Debtors to invest only in prudent investments that will provide the greatest amount of return for the Debtors while taking into account the safety of the investments. The Debtors submit that the Investment Guidelines provide sufficient protection for their cash and that it would be in the best interest of their estates and creditors for the Debtors to continue to follow the Investment Guidelines.

55.    To the extent that section 345 of the Bankruptcy Code would require the posting of a surety bond, the Debtors request that they be permitted to maintain their Investment Accounts in accordance with existing practices for cause. In evaluating whether "cause" exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver or modification of the section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver or modification under the circumstances. *See In re Serv. Merchandise Co.*, Inc., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

56.    "Cause" exists in these chapter 11 cases. First, the Investment Accounts are maintained at reputable, financially sound institutions that are subject to supervision by national banking regulators, and the funds in the Investment Accounts are invested solely in highly liquid Treasuries or interests in money market funds that invest primarily in

Treasuries, which the Debtors regard as cash equivalents. As such, the Debtors submit that the Investment Accounts are safe and secure and pose no substantial risk to the Debtors' estates. Second, the process of strictly satisfying the requirements of section 345(b) would lead to needless inconvenience and inefficiencies in the management of the Debtors' businesses. Third, a bond secured by the undertaking of an adequate corporate surety would be prohibitively expensive (if such a bond could be obtained at all).

57.    The Debtors believe that as long as their investments are restricted in accordance with the Investment Guidelines, no corporate surety is required to afford protection to creditors. Bankruptcy courts in this district have granted relief similar to that requested herein. *See, e.g.*, *In re Chassix Holdings, Inc.* Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 13, 2015) [Docket No. 253]; *In re AMR Corp.,* Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Feb. 7, 2011) [Docket No. 1052]; *In re Mesa Air Group, Inc.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y. Jan. 5, 2010) [Docket No. 35]; *In re Star Tribune Holdings Corp.* Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 6, 2009) [Docket No. 69]*; In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 2, 2008) [Docket No. 184];

58.    Nonetheless, the Debtors are seeking relief in relation to section 345 of the Bankruptcy Code only in the Final Order. Prior to entry of the Final Order, to the extent any of the Debtors' Bank Accounts do not comply with section 345 of the Bankruptcy Code or any other requirements of the U.S. Trustee as of the Petition Date, the Debtors request that the Court grant the Debtors 45 days, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S.

Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee.

### C. Waiving the United States Trustee Guidelines Regarding Authorized Depositaries and Authorizing Maintenance of the Debtors' Existing Bank Accounts and Business Forms is Warranted

59. To help debtors comply with section 345 of the Bankruptcy Code, the United States Trustee maintains Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "**Operating Guidelines**") as well as a list of authorized depositories (the "**Authorized Depositories**") at which debtors may maintain bank accounts. Unless otherwise ordered by the Court, the U.S. Trustee Guidelines require a debtor to, among other things: (a) establish one debtor-in-possession account for all estate monies required for the payment of taxes (including payroll taxes); (b) close all existing bank accounts and open new debtor-in-possession accounts; (c) maintain a separate debtor-in-possession account for cash collateral; (d) obtain checks that bear the designation "debtor in possession;" and (e) reference the bankruptcy case number and the type of account on such checks.

60. As noted above, courts use a number of factors to determine whether "cause" exists to waive the requirements of section 345(b) and the U.S. Trustee Guidelines regarding authorized depositories. "Cause" exists in these chapter 11 cases. Although the majority of the Debtors' cash is maintained in Bank Accounts that are Authorized Depositaries, some of the Debtors' cash is held in Bank Accounts that are not Authorized Depositories. However, the financial institutions with which such Bank Accounts are held are internationally-recognized, highly rated (according to Moody's and S&P) and financially stable entities. Many of these entities are insured by deposit insurance corporations in their home

-24-

jurisdictions, and are widely deemed to be as financially stable as the financial institutions

on the U.S. Trustee's Authorized Depositary list. Because these Bank Accounts are vital to

the Cash Management System, the Debtors submit that requiring the Debtors funds to other

banks would be unduly burdensome to the Debtors' operations, which must seamlessly

operate across multiple jurisdictions and multiple currencies.

61.     To avoid delays in payments, to ensure as smooth a transition into chapter 11

as possible with minimal disruption, and to aid in the Debtors' efforts to reorganize, it is

likewise critical that the Debtors be permitted to maintain the Bank Accounts with the same

account numbers following the commencement of these cases, subject to a prohibition

against honoring checks issued or dated before the Petition Date absent a prior order of the

Court.

62.     Courts in this district have recognized that, in complex chapter 11 cases, strict

enforcement of the requirement that a debtor in possession close its bank accounts and open

new bank accounts in accordance with the Operating Guidelines does not serve the

rehabilitative purpose of chapter 11.  Accordingly, this Court and others have waived this

requirement .  *See, e.g. In re LATAM Airlines Group S.A.*, Case No. 20-11254 (Bankr.

S.D.N.Y. May 28, 2020); [Docket No. 49] *In re Avianca Holdings S.A.*, Case No. 20-11133

(MG) (Bankr. S.D.N.Y. May 11, 2020) [Docket No. 247]; *In re Aegean Marine Petroleum

Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 17, 2018) [Docket No.

237]*; In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26,

2018) [Docket No. 428]*; In re Global A&T Electronics Ltd.*, Case No. 17-23931 (RDD)

(Bankr. S.D.N.Y. Dec. 19, 2017) [Docket No. 36]*; In re Avaya Inc*., Case No. 17-10089

(SMB) (Bankr. S.D.N.Y. Mar. 31, 2017) [Docket No. 341]; *In re BCBG Max Azria Glob.*

*Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [Docket No. 245]; *In re Republic Airways Holdings Inc*., Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Mar. 24, 2016) [Docket No. 228]; *In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 13, 2015) [Docket No. 253]. Similar authorization is appropriate in these chapter 11 cases.

63.     The Debtors also seek an order granting the Banks authority to continue to treat, service and administer the Bank Accounts as accounts of each respective Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process and honor and pay any and all postpetition checks, drafts, book transfers, wires, ACH Transfers, drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent that the Debtors have good funds standing to their credit with such Bank.

64.     Notwithstanding anything to the contrary in any other order of this Court, the Debtors request that the Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, book transfers, wires, or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires, or ACH Transfers are dated prior to, on, or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

65.     The Debtors also request that, in accordance with current practice and the agreements governing the Bank Accounts, the Banks be authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and that the Debtors be authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

66.     The Debtors further request that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

67.     In the ordinary course of business, the maintenance of the Cash Management System causes the Debtors to incur approximately $400,000 per month in charges and fees from the Banks (the "**Bank Charges**"). Credit Card Receivables from non-US and non-Mexican sales do not flow through the Debtors' credit card receivables factoring programs, and thus the Debtors also incur credit card processing fees on these transactions (the "**Credit Card Processing Charges**") which are deducted from the ultimate payments from the Credit Card Companies. The Debtors also seek authority, but not direction, to continue to pay all prepetition and postpetition Bank Charges and Credit Card Processing Charges in accordance with the agreements governing them.

68.     To minimize expenses, the Debtors further request they be authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business

-27-

forms (collectively, the "**Business Forms**"), substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided*, *however*, that as soon as reasonably practicable, (i) the Debtors shall mark "Debtors in Possession" and the chapter 11 case number under which these cases are being jointly administered on any newly printed check stock and (ii) the Debtors will cause any electronically generated Business Forms to reflect "Debtors in Possession" and the chapter 11 case number. As a result of the press releases issued by the Debtors and other press coverage, parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession.  Furthermore, the Debtors also believe that including "debtor in possession" on foreign correspondence may cause confusion for individuals and entities that are not familiar with chapter 11. In the absence of such relief, the Debtors' estates will be required to bear a potentially significant expense that the Debtors respectfully submit is unwarranted.

69.    If the Debtors are not permitted to maintain and use their Bank Accounts and continue to use their existing Business Forms as set forth herein, the resulting prejudice will include (a) disruption of the ordinary financial affairs and business operations of the Debtors, (b) delay in the administration of the Debtors' estates, (c) compromise of the Debtors' internal controls and accounting system, and (d) cost to the estates to set up new systems and open new accounts and print new business forms.

**D.    The Debtors Seek Authorization to Open and Close Bank Accounts**

70.    The Debtors also seek authorization to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts, or closing any existing Bank Account as they may deem necessary and

appropriate. The Debtors request that the Court authorize the Banks to honor the Debtors'

requests to open or close, as the case may be, such bank accounts or additional bank accounts,

provided, however, that, unless otherwise ordered by this Court, any new bank account shall

be with (a) a bank insured by the FDIC and that is organized under the laws of the United

States or any State therein, (b) a bank designated as an Authorized Depository under the U.S.

Trustee Guidelines or (c) any other bank, as the Debtors may determine upon consultation

with the U.S. Trustee.

71.     The Debtors further request that nothing contained in the order granting the

relief requested herein shall prevent Banks from modifying or terminating any Bank

Accounts or related services in accordance with the agreements governing such accounts or

services.

**E.     Applicable Financial Institutions Should Be Authorized to Honor and Process
Related Checks and Transfers**

72.     The Debtors also request that all applicable banks and other financial

institutions be authorized to (a) receive, process, honor and pay all checks presented for

payment of, and to honor all fund transfer requests made by the Debtors related to, the claims

that the Debtors request authority to pay in this Motion, regardless of whether the checks

were presented or fund transfer requests were submitted before, on or after the Petition Date

and (b) rely on the Debtors' designation of any particular check as approved by order of the

Court.

**Debtors Have Satisfied Bankruptcy Rule 6003(b)**

73.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to

avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a

motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate,

including a motion to pay all or part of a claim that arose before the filing of the petition"
within twenty-one (21) days of filing a petition. Irreparable harm "is a continuing harm which
cannot be adequately redressed by final relief on the merits and for which money damages
cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d
Cir. 2002) (internal quotations omitted). The "harm must be shown to be actual and
imminent, not remote or speculative." *Id.*

74.    As set forth above, the relief requested herein is essential to prevent
irreparable damage to the Debtors' operations and going-concern value. Accordingly, the
Debtors submit that the relief requested herein is necessary to avoid immediate and
irreparable harm, and that Bankruptcy Rule 6003(b) is satisfied.

### Request for Waiver of Stay

75.    To implement the foregoing successfully, the Debtors request that the Court
find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the
fourteen (14) day stay of an order authorizing the use, sale or lease of property under
Bankruptcy Rule 6004(h). As explained above and in the Sánchez Declaration, the relief
requested herein is necessary to avoid immediate and irreparable harm to the Debtors.
Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a)
have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy
Rule 6004(h), to the extent the notice requirement and stay apply.

### Notice

76.    Notice of this Motion will be provided to (a) the U.S. Trustee, (b) each of the
Debtors' 30 largest unsecured creditors on a consolidated basis, (c) each of the Debtors' five

largest secured creditors on a consolidated basis, (d) the Internal Revenue Service, (e) the

United States Attorney's Office for the Southern District of New York, (f) the Federal

Aviation Administration, (g) any party that has requested notice pursuant to Bankruptcy Rule

2002 and (h) the Banks (collectively, the "Notice Parties").   A copy of this Motion and any

order approving it will also be made available on the Debtors' Case Information Website

located at https://dm.epiq11.com/aeromexico.  In light of the nature of the relief requested in

this Motion, the Debtors respectfully submit that no further notice is necessary.

## **Reservation of Rights**

77.    Nothing contained herein or any action taken pursuant to such relief is

intended or shall be construed as (a) an admission as to the validity or priority of any claim

against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights

to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver

of any claims or causes of action which may exist against any creditor or interest holders; or

(d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program

or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

Likewise, if the Court grants the relief sought herein, any payment made pursuant to the

Court's order is not intended to be and should not be construed as an admission as to the

validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute

such claim.

## **No Previous Request**

78.    No previous request for the relief sought herein has been made by the Debtors

to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed

forms of order, substantially in the forms attached hereto, granting the relief requested herein

and such other and further relief as the Court deems just and proper.

Dated:    June 30, 2020
          New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By: /s/ Timothy Graulich

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Tel: (212) 450-4000
                                    Fax: (212) 607-7983
                                    Marshall S. Huebner
                                    Timothy Graulich
                                    James I. McClammy
                                    Stephen D. Piraino (*pro hac vice* pending)

                                    *Proposed Counsel to the Debtors and Debtors
                                    in Possession*

**Annex A**

**"Investment Grade" ratings chart for Investment Guidelines**

| Titles | Standard & Poor´s | Moody´s | Fitch |
|--------|-------------------|---------|-------|
| Short Term MEX Corporates (MXN) | mxA-2 | MX-2 | F2 (mex) |
| Short Term MEX & USA Corporates (USD) | A-3 | P-3 | F3 |
| Medium- Long Term MEX Corporates (MXN) | mxAA+ | Aa1.mx | AA+ (mex) |
| Medium- Long Term MEX & USA Corporates (USD) | AA+ | Aa1 | AA+ |

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.*, | Case No. 20-11563(_) |
| Debtors.[1] | **(Joint Administration Pending)** |

## INTERIM ORDER AUTHORIZING (i) DEBTORS TO CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (ii) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Grupo Aeroméxico S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an interim order (this "**Order**") and a final order authorizing (i) the Debtors to continue to use their existing cash management system and maintain existing bank accounts and business forms and (ii) financial institutions to honor and process related checks and transfers pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of the Bankruptcy Code and Bankruptcy Rule 6003 all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1.  The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Sánchez Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003(b) and is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.    The relief requested in the Motion is hereby granted on an interim basis as set forth herein.

2.    The Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and make transfers under their Cash Management System as described in the Motion (including the payment of Bank Charges and Credit Card Processing Charges).

3.    In accordance with their prepetition practices, the Debtors shall maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases. As a part

thereof, each Debtor shall record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Postpetition Transfer**").

4.      Any Debtor that makes a Postpetition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code.

5.      Additionally, the Debtors are authorized and empowered to continue performing, at their discretion, all Intercompany Transactions in their ordinary course of business; *provided, however*, absent Court order the Debtors shall not make any cash payments relating to prepetition Intercompany Transactions.

6.      Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, administrative expense status shall be granted for all postpetition Intercompany Claims, including claims arising from Intercompany Transactions provided by non-Debtors to the Debtors. In accordance with their prepetition practices, the Debtors shall maintain records of all Intercompany Transactions to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases.

7.      Pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized, in connection with the ordinary course operation of their Cash Management System, to obtain unsecured credit and incur unsecured debt in the ordinary course of business without any further notice or hearing.

8.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases.

9.      The Debtors are authorized to continue to use their Cash Management System to fund non-Debtor affiliates as they did prior to the Petition Date.

10.     The Banks are authorized to continue to treat, service, and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all postpetition checks, drafts, book transfers, wires, or automated clearing house transfers ("**ACH Transfers**") drawn on the Bank Accounts by the holders or makers thereof, as the case may to the extent the Debtors have good funds standing to their credit with such Bank.

11.     Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on, or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

12.     The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

-4-

13.     In accordance with current practice and the agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

14.     That any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

15.     The Debtors are authorized to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts, or closing any existing Bank Account as they may deem necessary and appropriate; *provided* that the Debtors shall, as soon as practicable, provide notice to the relevant Bank and the Office of the U.S. Trustee of any opening or closing of any Bank Accounts or other bank accounts.

16.     The Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts; *provided, however*, that, unless otherwise ordered by this Court, any new bank account shall be with (i) a bank insured by the FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank designated as an Authorized Depository under the U.S. Trustee

Guidelines, or (iii) any other bank, as the Debtors may determine upon consultation with the U.S. Trustee.

17.    Nothing contained herein shall prevent Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

18.    The Debtors are authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business forms (collectively, the "**Business Forms**") substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided, however*, that as soon as reasonably practicable, (i) the Debtors shall mark "Debtors in Possession" and the chapter 11 case number under which these cases are being jointly administered on any newly printed check stock and (ii) the Debtors will cause any electronically generated Business Forms to reflect "Debtors in Possession" and the chapter 11 case number.

19.    Prior to entry of the Final Order, to the extent any of the Debtors' Bank Accounts do not comply with section 345 of the Bankruptcy Code or any other requirements of the U.S. Trustee as of the Petition Date, the Debtors request that the Court grant the Debtors 45 days, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee.

20.    All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, book transfers, wires, check

transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

21.    All applicable banks and other financial institutions are hereby restricted to collect, retain or in any other form restrain the Company of using any and all amounts currently available or to be available postpetition, in the Debtors' Bank Accounts, unless specific security/guarantees have been placed before the Petition Date, in which case, said guarantees shall follow the specific ruling of this Court regarding secured creditors, if any.

22.    Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

23.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

24.    Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Cash Management System.

25.     Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

26.     The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

27.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

28.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

29.     A final hearing to consider the relief requested in the Motion shall be held on ____, ____ at _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on the Notice Parties so as to be actually received on or prior to _____, ____at 4:00 p.m.  (Prevailing Eastern Time).  Any objections or responses to the entry of the Final Order shall be (a) filed with the Court and (b) served upon and actually received by (i) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq.), (ii) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Marshall S. Huebner, Timothy Graulich and Stephen D. Piraino) and (iii)

counsel to any official committee then appointed in these chapter 11 cases, so as to be received by 4:00 p.m. (Prevailing Eastern Time) seven (7) days before the hearing to approve the relief requested in the Motion on a final basis (the "**Objection Deadline**"). A reply to an objection may be filed with the Court and served on or before 12:00 p.m. (Prevailing Eastern Time) on the day that is at least two (2) business days before the date of the applicable hearing. If no objections or responses are filed and served, this Court may enter the Final Order without further notice or hearing.

30.      If no objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Order, which order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the date of the commencement of these chapter 11 cases.

31.      Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

32.      This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____, 2020
        New York, New York

        _____
        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **Grupo Aeroméxico, S.A.B. de C.V.**, *et al.*, | **Case No. 20-11563(_)** |
| Debtors.[9] | **(Joint Administration Pending)** |

**FINAL ORDER AUTHORIZING (i) DEBTORS TO CONTINUE TO USE
EXISTING CASH MANAGEMENT SYSTEM AND MAINTAIN
EXISTING BANK ACCOUNTS AND
BUSINESS FORMS AND (ii) FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[10] of Grupo Aeroméxico S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an interim order and a final order (this "**Order**") authorizing (i) the Debtors to continue to use their existing cash management system and maintain existing bank accounts and business forms and (ii) financial institutions to honor and process related checks and transfers pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of the Bankruptcy Code and Bankruptcy Rule 6003, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-

---

[9] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[10] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and

venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided to the Notice Parties,

and it appearing that no other or further notice need be provided; and the Court

having reviewed the Motion and held a hearing to consider the relief requested in

the Motion on a final basis (the "**Hearing**"); and upon the Sánchez Declaration,

filed contemporaneously with the Motion, and the record of the Hearing; and the

Court having determined that the legal and factual bases set forth in the Motion and

at the Hearing establish just cause for the relief granted herein; and the Court having

determined that the relief granted herein is in the best interests of the Debtors, their

estates, creditors and all parties in interest; and upon all of the proceedings had

before the Court and after due deliberation and sufficient cause appearing therefor;

  IT IS HEREBY ORDERED THAT:

  1. The relief requested in the Motion is hereby granted on a final basis

as set forth herein.

  2. The Debtors are authorized and empowered, pursuant to sections

105(a) and 363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and

make transfers under their Cash Management System as described in the Motion

(including the payment of Bank Charges and Credit Card Processing Charges);

  3. In accordance with their prepetition practices, the Debtors shall

maintain records of all transfers within the Cash Management System to the same

extent they were recorded by the Debtors before the commencement of these

chapter 11 cases. As a part thereof, each Debtor shall record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Postpetition Transfer**").

4.      Any Debtor that makes a Postpetition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code.

5.      Additionally, the Debtors are authorized and empowered to continue performing, at their discretion, all Intercompany Transactions in their ordinary course of business; *provided*, *however*, absent Court order the Debtors shall not make any cash payments relating to prepetition Intercompany Transactions.

6.      Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, administrative expense status shall be granted for all postpetition Intercompany Claims, including claims arising from Intercompany Transactions provided by non-Debtors to the Debtors. In accordance with their prepetition practices, the Debtors shall maintain records of all Intercompany Transactions to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases.

7.      Pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized, in connection with the ordinary course operation of their Cash Management System, to obtain unsecured credit and incur unsecured debt in the ordinary course of business without any further notice or hearing.

8.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases.

-3-

9.      The Debtors are authorized to continue to use their Cash Management System to fund non-Debtor affiliates as they did prior to the Petition Date.

10.     The Banks are authorized to continue to treat, service, and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all postpetition checks, drafts, book transfers, wires, or automated clearing house transfers ("**ACH Transfers**") drawn on the Bank Accounts by the holders or makers thereof, as the case may be to the extent the Debtors have good funds standing to their credit with such Bank.

11.     Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on, or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

12.     The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an

-4-

innocent mistake made despite implementation of reasonable item handling procedures.

13.    In accordance with current practice and the agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

14.    That any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

15.    The Debtors are authorized to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts, or closing any existing Bank Account as they may deem necessary and appropriate; *provided* that the Debtors shall, as soon as practicable, provide notice to the relevant Bank and the Office of the U.S. Trustee of any opening or closing of any Bank Accounts or other bank accounts.

16.    The Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts; *provided, however*, that, unless otherwise ordered by this Court, any new bank

account shall be with (i) a bank insured by the FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank designated as an Authorized Depository under the U.S. Trustee Guidelines, or (iii) any other bank, as the Debtors may determine upon consultation with the U.S. Trustee.

17.    Nothing contained herein shall prevent Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

18.    The Debtors are authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business forms (collectively, the "**Business Forms**") substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided, however*, that as soon as reasonably practicable, (i) the Debtors shall mark "Debtor in Possession" and the chapter 11 case number under which these cases are being jointly administered on any newly printed check stock and (ii) the Debtors will cause any electronically generated Business Forms to reflect "Debtor in Possession" and the chapter 11 case number.

19.    The Debtors are authorized to invest and deposit their cash and cash equivalents in accordance with the Investment Guidelines in addition to the investments permitted by section 345 of the Bankruptcy Code.

20.    The Debtors' compliance with the Investment Guidelines shall be deemed to constitute compliance with section 345 of the Bankruptcy Code, and the Debtors are relieved from the obligations under section 345(b) to obtain a bond

-6-

from any entity with which money is deposited or invested in accordance with the Investment Guidelines.

21.    All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, book transfers, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

22.    All applicable banks and other financial institutions are hereby restricted to collect, retain or in any other form restrain the Company of using any and all amounts currently available or to be available postpetition, in the Debtors' Bank Accounts, unless specific security/guarantees have been placed before the Petition Date, in which case, said guarantees shall follow the specific ruling of this Court regarding secured creditors, if any.

23.    Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

24.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

25.    Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Cash Management System.

26.    Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

27.    Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

28.    The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

-8-

29.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

30.    This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:    _____, 2020
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit C

**Bank Accounts**

# Bank Accounts

| Entity | Bank | Account Type | Account Number * | Currency | Location |
|---|---|---|---|---|---|
| Aerovías de México, S.A de C.V. | ITAU | Working Accounts | 1330 | BRL | Brasil |
| Aerovías de México, S.A de C.V. | ITAU | Working Accounts | 4063 | BRL | Brasil |
| Aerovías de México, S.A de C.V. | Banco Santander Río | Working Accounts | 4175 | ARS | Argentina |
| Aerovías de México, S.A de C.V. | Banco Santander Río | Working Accounts | 4179 | ARS | Argentina |
| Aerovías de México, S.A de C.V. | ITAU | Working Accounts | 9516 | BRL | Brasil |
| Aerovías Empresa de Cargo S.A. de C.V. | CITIBANAMEX | Working Accounts | 0004 | MXN | México |
| Aerovías de México, S.A de C.V. | CitiBank | Working Accounts | 0014 | ARS | Argentina |
| Aerovías de México, S.A de C.V. | CitiBank | Working Accounts | 0017 | USD | Argentina |
| Aerovías de México, S.A de C.V. | SANTANDER | Working Accounts | 0065 | MXN | México |
| Aerovías de México, S.A de C.V. | Banco de América Central | Disbursement | 0238 | USD | El Salvador |
| Aerovías de México, S.A de C.V. | Shinsei Bank Jimu Shuchubu BC | Working Accounts | 0351 | JPY | Japón |
| Grupo Aeromexico, SAB DE CV | SANTANDER | Disbursement | 0442 | MXN | México |
| Aerovías Empresa de Cargo S.A. de C.V. | SANTANDER | Working Accounts | 0865 | MXN | México |
| Aerovías de México, S.A de C.V. | Banco del Crédito de Perú | Disbursement | 1192 | USD | Perú |
| Aerovías de México, S.A de C.V. | BBVA Continental | Working Accounts | 1232 | USD | Perú |
| Aerovías de México, S.A de C.V. | BBVA Frances | Working Accounts | 1232 | ARS | Argentina |
| Aerovías de México, S.A de C.V. | BBVA Continental | Disbursement | 1240 | PEN | Perú |
| Aerovías de México, S.A de C.V. | BBVA Continental | Disbursement | 1259 | USD | Perú |
| Aerovías de México, S.A de C.V. | Bank of America, NA | Working Accounts | 1606 | EUR | Francia |
| Aerovías de México, S.A de C.V. | SANTANDER | Working Accounts | 1898 | USD | México |
| Aerovías de México, S.A de C.V. | Bank of America, NA | Working Accounts | 2012 | GBP | Inglaterra |
| Aerolitoral, S.A. de C.V. | BBVA | Disbursement | 2041 | MXN | México |
| Aerovías de México, S.A de C.V. | HSBC PLC | Disbursement | 2210 | GBP | Inglaterra |
| Aerovias de México S.A. de C.V. | Banco Popular Español | Working Accounts | 2231 | EUR | España |
| Aerovías Empresa de Cargo S.A. de C.V. | SANTANDER | Working Accounts | 2231 | USD | México |
| Aerovías de México, S.A de C.V. | Colpatria | Working Accounts | 2462 | COP | Colombia |
| Aerolitoral, S.A. de C.V. | BBVA | Disbursement | 2683 | MXN | México |
| Aerovías de México, S.A de C.V. | Banco Santander | Working Accounts | 2691 | CLP | Chile |
| Aerolitoral, S.A. de C.V. | BBVA | Disbursement | 2705 | MXN | México |
| Aerovías de México, S.A de C.V. | SANTANDER | Working Accounts | 2828 | MXN | México |
| Aerovías de México, S.A de C.V. | SANTANDER | Working Accounts | 2836 | MXN | México |
| Aerovías de México, S.A de C.V. | BBVA | Concentration | 2841 | MXN | México |

| Entity | Bank | Account Type | Account Number * | Currency | Location |
|---|---|---|---|---|---|
| Aerovías de México, S.A de C.V. | BBVA | Working Accounts | 2868 | MXN | México |
| Grupo Aeromexico, SAB DE CV | BBVA | Working Accounts | 2910 | MXN | México |
| Aerovías de México, S.A de C.V. | BBVA Frances | Disbursement | 2914 | ARS | Argentina |
| Aerovías de México, S.A de C.V. | Bank of America, NA | Working Accounts | 3013 | EUR | España |
| Aerovías de México, S.A de C.V. | Wells Fargo Bank, N.A. | Working Accounts | 3046 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | Banco de América Central | Working Accounts | 3091 | USD | Panamá |
| Aerovías de México, S.A de C.V. | Banco Santander | Disbursement | 3120 | BRL | Brasil |
| Aerovías de México, S.A de C.V. | Banco Mercantil | Working Accounts | 3136 | VEF | Venezuela |
| Aerovías Empresa de Cargo S.A. de C.V. | JP Morgan Chase Bank, N.A. | Working Accounts | 3206 | GBP | Alemania |
| Aerovías de México, S.A de C.V. | Banco Popular Español | Disbursement | 3214 | EUR | España |
| Aerovías de México, S.A de C.V. | Banco Popular Español | Working Accounts | 3312 | EUR | España |
| Aerovías de México, S.A de C.V. | CITIBANK, N.A. NEW YORK, N.Y | Concentration | 3319 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | HSBC France | Disbursement | 3695 | EUR | Holanda |
| Aerolitoral, S.A. de C.V. | Banco de América Central | Disbursement | 3743 | GTQ | Guatemala |
| Aerovías Empresa de Cargo S.A. de C.V. | SANTANDER | Payroll | 3778 | MXN | México |
| Aerolitoral, S.A. de C.V. | CITIBANAMEX | Disbursement | 4004 | MXN | México |
| Aerovías de México, S.A de C.V. | Bank of America, NA | Working Accounts | 4207 | CAD | Canadá |
| Aerovías de México, S.A de C.V. | Bank of America, NA | Disbursement | 4215 | CAD | Canadá |
| Aerovías de México, S.A de C.V. | Colpatria | Working Accounts | 4337 | COP | Colombia |
| Aerovías de México, S.A de C.V. | CITIBANAMEX | Working Accounts | 4401 | MXN | México |
| Aerovias de México S.A. de C.V. | Banco Popular Español | Working Accounts | 4436 | EUR | España |
| Aerolitoral, S.A. de C.V. | CITIBANK, N.A. NEW YORK, N.Y | Disbursement | 4859 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | Banco de América Central | Working Accounts | 4941 | HNL | Honduras |
| Aerovías de México, S.A de C.V. | Banco de América Central | Disbursement | 4951 | HNL | Honduras |
| Aerovías Empresa de Cargo S.A. de C.V. | BBVA | Working Accounts | 4982 | MXN | México |
| Aerolitoral, S.A. de C.V. | Banco de América Central | Disbursement | 4991 | HNL | Honduras |
| Aerovías de México, S.A de C.V. | Citibank - FI | Working Accounts | 5226 | USD | Estados Unidos |
| Aerovías de México S.A. de C.V. | Banco Autofin México | Financing Account | 5235 | MXN | México |
| Aerovías de México, S.A de C.V. | Bank of Tokyo Mitsubishi UFJ | Disbursement | 5301 | JPY | Japón |
| Grupo Aeromexico, SAB DE CV | CITIBANK, N.A. NEW YORK, N.Y | Working Accounts | 5305 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | Bank of Tokyo Mitsubishi UFJ | Disbursement | 5314 | JPY | Japón |

| Entity | Bank | Account Type | Account Number * | Currency | Location |
|---|---|---|---|---|---|
| Aerolitoral, S.A. de C.V. | Banco de América Central | Disbursement | 5459 | COR | Nicaragua |
| Aerolitoral, S.A. de C.V. | Banco de América Central | Disbursement | 5475 | USD | Nicaragua |
| Aerovías de México, S.A de C.V. | BANCO NACIONAL DEL EJERCITO, FUERZA AEREA y ARMADA | Working Accounts | 5547 | MXN | México |
| Aerovías Empresa de Cargo S.A. de C.V. | BBVA | Working Accounts | 5547 | MXN | México |
| Aerovías Empresa de Cargo S.A. de C.V. | JP Morgan Chase Bank, N.A. | Disbursement | 5590 | USD | Estados Unidos |
| Aerolitoral, S.A. de C.V. | Banco de América Central | Disbursement | 5592 | USD | El Salvador |
| Aerovías Empresa de Cargo S.A. de C.V. | JP Morgan Chase Bank, N.A. | Working Accounts | 5608 | USD | Estados Unidos |
| Aerovías Empresa de Cargo S.A. de C.V. | Wells Fargo Bank, N.A. | Working Accounts | 5645 | USD | Estados Unidos |
| Aerovías de México, S.A. de C.V. | Produbanco | Working Accounts | 5663 | USD | Ecuador |
| Aerovías de México, S.A. de C.V. | Scotiabank | Working Accounts | 5697 | CLP | Chile |
| Aerovías de México, S.A. de C.V. | Scotiabank | Working Accounts | 5700 | USD | Chile |
| Aerovías Empresa de Cargo S.A. de C.V. | BBVA | Disbursement | 5709 | MXN | México |
| Aerovías de México, S.A. de C.V. | Banco Occidental del Descuento | Disbursement | 5750 | VEF | Venezuela |
| Aerovías de México, S.A. de C.V. | Banco de América Central | Working Accounts | 6008 | USD | Nicaragua |
| Aerovías de México, S.A. de C.V. | Banco de América Central | Working Accounts | 6059 | CRC | Costa Rica |
| Aerovías de México, S.A. de C.V. | Banco de América Central | Working Accounts | 6109 | USD | Costa Rica |
| Aerovías de México, S.A. de C.V. | SANTANDER | Working Accounts | 6157 | MXN | México |
| Aerovías de México, S.A. de C.V. | Bank of Tokyo Mitsubishi UFJ | Disbursement | 6333 | JPY | Japón |
| Aerovías Empresa de Cargo S.A. de C.V. | JP Morgan Chase Bank, N.A. | Working Accounts | 6377 | EUR | Alemania |
| Aerovías de México, S.A. de C.V. | BBVA | Working Accounts | 6397 | MXN | México |
| Aerovías de México, S.A de C.V. | Banco Popular Dominicano | Working Accounts | 6493 | DOP | Santo Domingo |
| Aerolitoral, S.A. de C.V. | SANTANDER | Payroll | 6558 | MXN | México |
| Aerovías de México, S.A. de C.V. | Banco Popular Dominicano | Working Accounts | 6592 | USD | Santo Domingo |
| Aerovías de México, S.A. de C.V. | HSBC | Working Accounts | 6796 | MXN | México |
| Aerovías de México, S.A. de C.V. | Bank of America, NA | Working Accounts | 7012 | EUR | Holanda |
| Aerovías de México, S.A. de C.V. | Bank of America, NA | Working Accounts | 7032 | KRW | Corea del Sur |
| Aerovías de México, S.A. de C.V. | VE POR MAS | Investment | 7107 | MXN | México |
| Aerovías de México, S.A. de C.V. | Banco Santander | Working Accounts | 7269 | USD | Chile |
| Aerovías de México, S.A. de C.V. | HSBC France | Working Accounts | 7495 | EUR | Francia |
| Aerovías de México, S.A. de C.V. | HSBC France | Disbursement | 7506 | EUR | Francia |

| Entity | Bank | Account Type | Account Number * | Currency | Location |
|---|---|---|---|---|---|
| Aerovías de México, S.A de C.V. | HSBC France | Working Accounts | 7521 | EUR | Francia |
| Aerovías de México, S.A de C.V. | HSBC France | Working Accounts | 7534 | EUR | Francia |
| Aerovías de México, S.A de C.V. | BBVA | Working Accounts | 7551 | COP | Colombia |
| Aerovías de México, S.A de C.V. | BBVA | Working Accounts | 7569 | COP | Colombia |
| Aerovías de México, S.A de C.V. | Banco de América Central | Working Accounts | 7600 | USD | Honduras |
| Aerovías de México, S.A de C.V. | Wells Fargo Bank, N.A. | Restricted Account | 7705 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | Banco Financiero Internacional | Working Accounts | 7931 | USD | Cuba |
| Aerovías de México, S.A de C.V. | CITIBANAMEX | Working Accounts | 8006 | MXN | México |
| Aerovías de México, S.A de C.V. | CITIBANAMEX | Working Accounts | 8006 | MXN | México |
| Aerovías de México, S.A de C.V. | CITIBANAMEX | Disbursement | 8049 | MXN | México |
| Aerolitoral, S.A. de C.V. | CITIBANAMEX | Disbursement | 8111 | MXN | México |
| Aerovías de México, S.A de C.V. | CITIBANAMEX | Working Accounts | 8221 | MXN | México |
| Aerovías de México, S.A de C.V. | CI BANCO | Financing Account | 8458 | MXN | México |
| Aerovías de México, S.A de C.V. | Banco de América Central | Working Accounts | 8516 | GTQ | Guatemala |
| Aerovías de México, S.A de C.V. | Banco Santander | Working Accounts | 8520 | BRL | Brasil |
| Aerovías de México, S.A de C.V. | Banco de América Central | Working Accounts | 8524 | USD | Guatemala |
| Aerovías Empresa de Cargo S.A. de C.V. | CITIBANK, N.A. NEW YORK, N.Y | Working Accounts | 8551 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | JP Morgan Chase Bank, N.A. | Working Accounts | 8688 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | BBVA | Disbursement | 8774 | MXN | México |
| Aerovías de México, S.A de C.V. | Produbanco | Working Accounts | 8794 | USD | Ecuador |
| Aerolitoral, S.A. de C.V. | JP Morgan Chase Bank, N.A. | Disbursement | 8836 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | BBVA | Working Accounts | 8934 | USD | México |
| Aerovías de México S.A. de C.V. | JP Morgan Chase | Working Accounts | 8945 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | Wells Fargo Bank, N.A. | Disbursement | 8968 | USD | Estados Unidos |
| Aerovías de México, S.A de C.V. | Bank of America, NA | Working Accounts | 9014 | JPY | Japón |
| Aerovías de México, S.A de C.V. | HSBC France | Working Accounts | 9033 | USD | Francia |
| Aerovías de México, S.A de C.V. | Banco de América Central | Working Accounts | 9085 | USD | El Salvador |
| Aerovías de México, S.A de C.V. | Bank of Tokyo Mitsubishi UFJ | Working Accounts | 9425 | JPY | Japón |
| Aerovías de México, S.A de C.V. | BBVA | Disbursement | 9503 | MXN | México |
| Aerovías de México, S.A de C.V. | BANCO BASE | Investment | 9762 | MXN | México |

-C-5-

| Entity | Bank | Account Type | Account Number * | Currency | Location |
|---|---|---|---|---|---|
| Aerolitoral, S.A. de C.V. | Wells Fargo Bank, N.A. | Disbursement | 9858 | USD | Estados Unidos |
| Aerolitoral, S.A. de C.V. | Banco de América Central | Disbursement | 9982 | USD | El Salvador |

**Trust Accounts - Debtors Act as First or Second Beneficiary**

| Account | Account Type | Currency | Location |
|---|---|---|---|
| Trust 1748 | Accounts of the Trust | MXN | México |
| Trust 1925 | Accounts of the Trust | USD | Estados Unidos |
| Trust 737 | Accounts of the Trust | USD | Estados Unidos |

## **Exhibit D**

**Cash Management System Schematic**

**Cash Management System Schematic**

