**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Timothy Graulich
James I. McClammy
Stephen D. Piraino (*pro hac vice* pending)

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.*, | **Case No. 20-11563 (_)** |
| Debtors.[1] | **(Joint Administration Pending)** |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING (I) THE DEBTORS TO CONTINUE AND RENEW THEIR
LIABILITY, PROPERTY, CASUALTY AND OTHER INSURANCE POLICIES AND
HONOR ALL OBLIGATIONS IN RESPECT THEREOF AND (II) FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Grupo Aeroméxico, S.A.B. de C.V. ("**Grupo Aeroméxico**") and its affiliates that are

debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"; the Debtors

collectively with their direct and indirect non-Debtor subsidiaries, the "**Company**" or

"**Aeroméxico**") hereby move (this "**Motion**") this Court (as defined herein) for entry of interim

and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

"**Interim Order**" and the "**Final Order,**" respectively), granting the relief described below. In support thereof, the Debtors refer to the contemporaneously-filed *Declaration of Ricardo Javier Sánchez Baker in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Sánchez Declaration**") and further represent as follows:

<u>Jurisdiction and Venue</u>

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>Background</u>

2.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has not appointed a statutory committee of creditors in these chapter 11 cases, nor has the Court appointed a trustee or examiner therein.

3.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

4.      The Debtors and their direct and indirect subsidiaries constitute the largest airline in Mexico and are collectively known as Mexico's "global airline," providing public air carrier services for passengers and goods (including fleet and cargo services) in and outside of Mexico, and services related to such air operations. The Debtors are one of the four founding members of the SkyTeam airline alliance, and their businesses include Aeroméxico, Aeroméxico Connect, Aeroméxico Cargo and Aeroméxico Servicios. Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the Sánchez Declaration, filed contemporaneously herewith.

### **Relief Requested**

5.      By this Motion, and pursuant to sections 105(a), 361, 363, 1107, 1108 and 1112 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004 and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of the Interim Order and Final Order, substantially in the forms attached hereto, authorizing (a) the Debtors to maintain, continue, renew or purchase, in their sole discretion, Insurance Policies (defined below) on an uninterrupted basis and in accordance with the practices and procedures in effect before the Petition Date and (b) financial institutions to receive, process, honor and pay checks or wire transfers used by the Debtors to pay the foregoing. This would include (a) paying all amounts arising under the Insurance Policies, including, but not limited to, any Brokers' Fees (defined below), whether due and payable before, on or after the Petition Date and (b) renewing or obtaining new insurance policies as needed in the ordinary course of business (including creating, capitalizing, and obtaining insurance from a captive insurance company or a segregated account within a licensed insurer as described herein). If the requested relief is not granted and the Insurance Policies lapse or terminate, the Debtors may well be unable to continue large portions

of their operations, thereby endangering the Debtors' successful reorganization and substantially harming all creditors.

## A.       The Debtors' Insurance Policies

6.       The Debtors require various liability, casualty, property and other insurance, reinsurance and risk control programs in the ordinary course of their businesses (the "**Insurance Policies**"), which they maintain through several private insurance carriers (the "**Insurance Carriers**"). A summary of the Debtors' principal Insurance Policies is set forth on **Exhibit C** attached hereto.[2]

7.       The Insurance Policies include coverage for, among other things, war, terrorism, operation of aircraft, property damage, ground handling operators liability, operation of automobiles, officers' or directors' liability, civil liability, transport/cargo and various other property-related and general liabilities. All of the Insurance Policies are essential to the ongoing operation of the Debtors' businesses.

## B.       The Premium Payments

8.       The Insurance Policies renew on various dates throughout the year. The premiums for most of the Insurance Policies (collectively, the "**Insurance Premiums**") are determined annually and are due either in their entirety at policy inception or via installments through the policy term. In Mexico, the Debtors make such payments directly to the Insurance Carriers. Outside of Mexico, Brokers' Fees and Insurance Premiums are typically paid together through the applicable Broker. The Debtors' two brokers are Arthur J. Gallagher Risk Management Services, Inc. and Sterling Re Intermediario de Reaseguro, S.A.P.I. de C.V. (the "**Brokers**").

---

[2] **Exhibit C** is intended to be a comprehensive schedule of the principal Insurance Policies. The Debtors, however, request relief applicable to all Insurance Policies, regardless of whether such Insurance Policy is specifically identified on **Exhibit C**.

9.      Within Mexico, the Debtors conduct all negotiations with Insurance Carriers directly. The Brokers are employed primarily to facilitate reinsurance arrangements required under local law. The Brokers receive compensation from the Debtors for various services in the form of a commission included in the Insurance Premiums paid by the Debtors or a fee for non-commission insurance policies, as well as fees for claim noticing services (the "**Brokers' Fees**"). The employment of the Brokers allows the Debtors to obtain and manage the Insurance Policies and is also required under law in Mexico. Accordingly, the Debtors believe that it is in the best interests of the creditors and estates to continue their business relationship with the Brokers.

10.      The Debtors' aggregate annual Insurance Premiums under the Insurance Policies total approximately $17.0 million. As of the Petition Date, Insurance Premiums of approximately $7.0 million are owed, but not yet due, under the current Insurance Policies. The Debtors believe that approximately $1.0 million in Insurance Premiums or amounts under the Insurance Policies that were due and payable on or prior to the Petition Date are outstanding. Additionally, the Debtors believe that approximately $450,000 in Brokers' Fees that were due and payable on or prior to the Petition Date are outstanding. The Debtors seek authority, but not direction, to satisfy any such prepetition obligations described above.

11.      The premiums for certain Insurance Policies in the United States are currently financed pursuant to a premium financing agreement with IPFS Corporation ("**IPFS**").[3] Payments of approximately $5,000 are made monthly on account of this program ("**Financing Agreement Payments**"), which results in an annual interest rate of 4.23%. The Debtors believe that approximately $10,000 in Financing Agreement Payments that were due and payable on or prior

---

[3] The dollar figures listed for this premium financing agreement only reflect the Insurance Policy covered in this Motion. The rest of the premium financing agreement covers insurance policies covered by the Debtors' Wages Motion, which is being contemporaneously filed herewith.

to the Petition Date are outstanding. The Debtors seek authority, but not direction, to satisfy any such prepetition Financing Agreement Payments. Additionally, the Debtors seek authority, but not direction, to enter into other premium financing agreements as necessary or appropriate in the ordinary course of their business, without further Court approval.

12.    Pursuant to the Insurance Policies, the Debtors may be required to pay various deductibles or self-insurance retention amounts (collectively, the "**Insurance Deductibles**"), depending upon the type of claim and insurance policy involved. Under certain policies, the Insurance Carriers may pay claimants and then invoice the Debtors for any Insurance Deductible. In such situations, the Insurance Carriers may have prepetition claims against the Debtors. As of the Petition Date, the Debtors do not believe there are any material prepetition obligations owed to Insurance Carriers relating to Insurance Deductibles, but, out of an abundance of caution, the Debtors seek authority, in their discretion, to satisfy any such prepetition obligations.

13.    The Debtors believe that certain prepetition amounts under the Insurance Policies remain outstanding. By this Motion, the Debtors request the authorization, but not the direction, to pay such amounts.

## **Basis for Relief**

**A.    The Bankruptcy Code Authorizes the Debtors to Maintain the Insurance Policies**

14.    The nature of the Debtors' businesses and the extent of their operations makes it essential for the Debtors to maintain their Insurance Policies on an ongoing and uninterrupted basis. The nonpayment or delayed payment of any premiums, deductibles or related fees under the Insurance Policies could result in one or more of the Insurance Carriers terminating or declining to renew their insurance policies or refusing to enter into new insurance policies with the Debtors in the future. If any of the Insurance Policies lapse without renewal, the Debtors could be in violation of applicable law, resulting in a loss of licenses and therefore loss of the ability to operate

their business, which would result in immediate and irreparable harm to the Debtors and their estates. Allowing the Insurance Policies to lapse without renewal could also result in exposure to substantial liability for personal, contractual and/or property damages, to the detriment of all parties-in-interest.

15.    Moreover, as a prerequisite for operating an airline and traversing specific airspace, domestic and foreign governmental agencies also require the Debtors to maintain certain Insurance Policies. Moreover, pursuant to the terms of many of their aircraft and real property leases and secured lending facilities, the Debtors are obligated to demonstrate certain levels of insurance coverage and to remain current with respect to certain of their Insurance Policies. The Debtors must also maintain the Insurance Policies to comply with the U.S. Trustee Guidelines (as defined herein). Thus, in order for the Debtors to maintain their operations in compliance with various legal and contractual obligations, the Debtors must be able to continue their Insurance Policies without disruption.

16.    If the Debtors are unable to make any outstanding payments that may be owed on account of the Insurance Policies, the unpaid Insurance Carriers may seek relief from the automatic stay to terminate such Insurance Policies. The Debtors would be required to obtain replacement insurance on an expedited basis and at a significant cost to the estates. If the Debtors were required to obtain replacement insurance, this payment likely would be greater than what the Debtors currently pay. Even if these Insurance Carriers were not permitted to terminate the agreements, any interruption of payment would have an adverse effect on the Debtors' ability to obtain future policies at reasonable rates.

     **i.**     **The Insurance Policies Can Be Maintained Under Bankruptcy Code Section 363(c)(1)**

17.     Although the Debtors do not believe that Court approval is required to maintain their existing Insurance Policies following the Petition Date, the Debtors seek this relief out of an abundance of caution. The Insurance Carriers and Brokers may be reluctant to engage in ordinary course transactions with the Debtors absent an order eliminating any uncertainty as to whether the Debtors have the requisite authority to engage in such transactions.

18.     Bankruptcy Code section 363(c) authorizes a debtor in possession operating its business pursuant to Bankruptcy Code section 1108 to "enter into transactions . . . in the ordinary course of business, without notice or a hearing, and use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

19.     One purpose of Bankruptcy Code section 363 is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business without oversight by its creditors or the Court. *See, e.g.*, *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998); *In re Leslie Fay Companies, Inc.*, 168 B.R. 294, 301 (Bankr. S.D.N.Y. 1994).

20.     In addition, Bankruptcy Code section 363(b)(1) empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y.

2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the

standard for determining a section 363(b) motion is "a good business reason").

21.     The business judgment rule is satisfied "when the following elements are present:

(1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to

some courts and commentators, no abuse of discretion or waste of corporate assets." *Official

Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R.

650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations

omitted). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as

distinct from a decision made arbitrarily or capriciously), courts will generally not entertain

objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v.

Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

Courts in this district have consistently and appropriately been reluctant to interfere with corporate

decisions absent a showing of bad faith, self-interest, or gross negligence and will uphold a board's

decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res.

Inc.*, 147 B.R. at 656.

22.     The Debtors submit that the relief requested in this Motion represents a sound

exercise of the Debtors' business judgment. To the extent the maintenance, continuance and

renewal of the Insurance Policies and any and all payments related thereto (including any payments

made to the Brokers) are outside the ordinary course of business, they are justified under

Bankruptcy Code section 363(b). Even where coverage is not expressly required by applicable

law, the Debtors are nevertheless compelled by sound business practice to maintain essential

insurance coverage. Any interruption in such coverage would expose the Debtors to a variety of

risks, including the possible (a) incurrence of direct liability for the payment of claims that

otherwise would have been covered by the Insurance Policies, (b) incurrence of material costs and other losses that otherwise would have been reimbursed, such as attorneys' fees for certain covered claims, (c) inability to obtain similar types and levels of insurance coverage, (d) incurrence of higher costs for reestablishing lapsed policies or obtaining new insurance coverage and (e) incurrence of direct liability for failing to maintain required insurance coverage.

23.     Courts in this district have routinely granted similar relief. *See, e.g.*, *LATAM Airlines Group S.A.,* Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. June 2, 2020); *In re Avianca Holdings S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y. May 12, 2020); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019); *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 23, 2019); *In re Cumulus Media Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re 21st Century Oncology Holdings, Inc.*, Case No 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Apr. 26, 2016).

**ii.      The Doctrine of Necessity and Bankruptcy Code Section 105 Support Payment of Amounts Necessary to Maintain Insurance**

24.     Similarly, although the Debtors do not believe they have any material outstanding prepetition obligations or payment defaults with respect to their insurance obligations, including the Insurance Deductibles, the Debtors are seeking authority to pay any such amounts to ensure continuing insurance coverage during these bankruptcy cases.

25.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a

novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Under

section 105 of the Bankruptcy Code, "the court can permit pre-plan payment of a pre-petition

obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126,

127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

26.    In a long line of well-established cases, federal courts have consistently permitted

post-petition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport Ry. Co.*,

106 U.S. 286, 312 (1882) (permitting payment of pre-receivership claim prior to reorganization to

prevent "stoppage of [crucial] business relations"); *Mich. Bureau of Workers' Disability Comp. v.*

*Chateaugay Corp. (In re Chateaugay Corp.*), 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming

order authorizing payment of prepetition wages, salaries, expenses and benefits).

27.    This doctrine of "necessity" functions in a chapter 11 reorganization as a

mechanism by which the bankruptcy court can exercise its equitable power to allow payment of

critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Bos. & Me.*

*Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize

trustees to pay claims for goods and services that are indispensably necessary to debtors' continued

operation). The doctrine is frequently invoked early in a reorganization, particularly in connection

with those chapter 11 sections that relate to payment of prepetition claims.

28.    The Debtors' ability to maintain and honor their Insurance Policies in a timely

manner is critical to the ongoing operation of their businesses, as discussed above, and therefore

necessary to maximize the value of the Debtors' estates. The Debtors believe that any prepetition

amounts that they will pay in respect of Insurance Policies would be small relative to the size of

the Debtors' estates and the critical benefits provided by the Insurance Policies. As noted above,

interruption of the Debtors' insurance coverage could, among other things, cause the Debtors to violate state and/or federal law, as well as express obligations derived from the federal concession granted by the Mexican Federal Government, and expose the Debtors to direct liability for significant claims that otherwise would be covered by insurance, thus potentially substantially diminishing the value of the Debtors' estates. For the Debtors to pay what would be relatively small prepetition amounts under the Insurance Policies to avoid such an occurrence is in the best interests of the Debtors, their estates and all of the Debtors' stakeholders and other parties-in-interest. Thus, payments of amounts to ensure continuation of the Insurance Policies, including the payment of prepetition and post-petition Insurance Premiums, Brokers' Fees and other amounts necessary to maintain the Debtors' Insurance Policies, fall within the sound business judgment of the Debtors and will benefit, rather than prejudice, the Debtors' creditors by preserving the property of the Debtors' estates. The Debtors submit that the relief requested herein is appropriate under the doctrine of necessity and Bankruptcy Code section 105(a).

### iii. Payment of Amounts Necessary to Maintain Insurance Is Required by the Bankruptcy Code and the United States Trustee

29.     The Debtors believe that the Insurance Policies are essential to the operation of their business during these chapter 11 cases.

30.     Under the terms of the Insurance Policies, the Insurance Carriers may cancel the underlying Insurance Policies due to nonpayment by the Debtors. Such cancellation will harm the Debtors not only because some of the Insurance Policies are required by various regulations, laws and contracts that govern the Debtors' commercial activities, but Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, the Operating Guidelines and Reporting Requirements for

Debtors in Possession and Trustees, issued by the Office of the United States Trustee for Region 2 (the "**U.S. Trustee Guidelines**"), require the Debtors to maintain insurance coverage throughout the pendency of the chapter 11 cases.

**B.     Applicable Financial Institutions Should Be Authorized to Honor and Process Insurance-Related Checks and Transfers**

31.     The Debtors also request that all applicable banks and other financial institutions be authorized to (a) receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date and (b) rely on the Debtors' designation of any particular check as approved by order of the Court.

<u>**Debtors Have Satisfied Bankruptcy Rule 6003(b)**</u>

32.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of filing a petition. Irreparable harm "is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotations omitted). The "harm must be shown to be actual and imminent, not remote or speculative." *Id.*

33.     As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations and going-concern value. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and that Bankruptcy Rule 6003(b) is satisfied.

## Request for Waiver of Stay

34.    To implement the foregoing successfully, the Debtors request that the Court find

that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the fourteen (14)

day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

As explained above and in the Sánchez Declaration, the relief requested herein is necessary to

avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to find the

notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the

fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent the notice requirement

and stay apply.

## Notice

35.    Notice of this Motion will be provided to (a) the U.S. Trustee, (b) each of the

Debtors' 30 largest unsecured creditors on a consolidated basis, (c) each of the Debtors' five largest

secured creditors on a consolidated basis, (d) the Internal Revenue Service, (e) the United States

Attorney's Office for the Southern District of New York, (f) the Federal Aviation Administration,

(g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (h) the Brokers, (i) IPFS

and (j) the Insurance Carriers set forth on **Exhibit C** attached hereto (collectively, the "**Notice**

**Parties**"). A copy of this Motion and any order approving it will also be made available on the

Debtors' Case Information Website located at https://dm.epiq11.com/aeromexico. In light of the

nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice

is necessary.

## Reservation of Rights

36.    Nothing contained herein or any action taken pursuant to such relief is intended or

shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors;

(b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of,

basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### No Previous Request

37.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed forms of order, substantially in the forms attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    June 30, 2020
        New York, New York

                    DAVIS POLK & WARDWELL LLP

                    By: /s/ Timothy Graulich

                    450 Lexington Avenue
                    New York, New York 10017
                    Tel: (212) 450-4000
                    Fax: (212) 607-7983
                    Marshall S. Huebner
                    Timothy Graulich
                    James I. McClammy
                    Stephen D. Piraino (*pro hac vice* pending)
                    *Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | **Case No. 20-11563 (_)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

## INTERIM ORDER AUTHORIZING (I) THE DEBTORS TO CONTINUE AND RENEW THEIR LIABILITY, PROPERTY, CASUALTY AND OTHER INSURANCE POLICIES AND HONOR ALL OBLIGATIONS IN RESPECT THEREOF AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Grupo Aeroméxico, S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an interim order (this "**Order**") and a final order authorizing, but not directing, (i) the Debtors to maintain, continue, review or purchase, in their sole discretion, their liability, property, casualty and other insurance policies and honor all obligations in respect thereof and (ii) financial institutions to receive, honor and process related checks and transfers, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Sánchez Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003(b) and is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted on an interim basis as set forth herein.

2.      The Debtors are, in their sole discretion, authorized to continue their Insurance Policies, including, but not limiting to, the Insurance Policies listed on **Exhibit C** attached to the Motion, without interruption and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are, in their sole discretion, authorized, but not directed, to pay prepetition obligations, if any, that may be owed in connection with the Insurance Policies (including Brokers' Fees, Insurance Premiums, Insurance Deductibles and Financing Agreement Payments) during the interim period, whether due and payable before, on or after the Petition Date, to the extent any such obligations are owed.

4.     The Debtors are, in their sole discretion, authorized, but not directed, to renew or obtain new insurance policies or execute other agreements or premium financing agreements in connection with their Insurance Policies, including, without limitation, upon the expiration or termination of any Insurance Policy.

5.     All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.     Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

7.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

8.     Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Policies.

9.      Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

10.     The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

11.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

12.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

13.     A final hearing to consider the relief requested in the Motion shall be held on _____, ____ at _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on the Notice Parties so as to be actually received on or prior to ____, ____at 4:00 p.m. (Prevailing Eastern Time). Any objections or responses to the entry of the Final Order shall be (a) filed with the Court and (b) served upon and actually received by (i) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq.), (ii) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Marshall S. Huebner, Timothy Graulich and Stephen D. Piraino) and (iii) counsel to any official committee then appointed in these chapter 11 cases, so as to be received by 4:00 p.m. (Prevailing Eastern Time) seven (7) days before the

hearing to approve the relief requested in the Motion on a final basis (the "**Objection Deadline**").

A reply to an objection may be filed with the Court and served on or before 12:00 p.m. (Prevailing

Eastern Time) on the day that is at least two (2) business days before the date of the applicable

hearing. If no objections or responses are filed and served, this Court may enter the Final Order

without further notice or hearing.

14.     If no objections are timely filed and served as set forth herein, the Debtors shall, on

or after the Objection Deadline, submit to the Court a final order substantially in the form of this

Order, which order shall be submitted and may be entered with no further notice or opportunity to

be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the date of the

commencement of these chapter 11 cases.

15.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or

Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the

terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

16.     This Court shall retain exclusive jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:     _____, 2020
          New York, New York



_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | Case No. 20-11563 (_) |
| Debtors.[1] | (Joint Administration Pending) |

**FINAL ORDER AUTHORIZING (I) THE DEBTORS TO CONTINUE AND RENEW THEIR LIABILITY, PROPERTY, CASUALTY AND OTHER INSURANCE POLICIES AND HONOR ALL OBLIGATIONS IN RESPECT THEREOF AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Grupo Aeroméxico, S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an interim order  and a final order (this "**Order**") authorizing, but not directing, (i) the Debtors to maintain, continue, review or purchase, in their sole discretion, their liability, property, casualty and other insurance policies and honor all obligations in respect thereof and (ii) financial institutions to receive, honor and process related checks and transfers, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided;

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the Sánchez Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that the relief granted herein is in the best interests of the Debtors, their estates, creditors and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted on a final basis as set forth herein.

2.      The Debtors are, in their sole discretion, authorized to continue their Insurance Policies, including, but not limiting to, the Insurance Policies listed on **Exhibit C** attached to the Motion, without interruption and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are, in their sole discretion, authorized, but not directed, to pay prepetition obligations, if any, that may be owed in connection with the Insurance Policies (including Brokers' Fees, Insurance Premiums, Insurance Deductibles and Financing Agreement Payments), whether due and payable before, on or after the Petition Date, to the extent any such obligations are owed.

4.      The Debtors are, in their sole discretion, authorized, but not directed, to renew or obtain new insurance policies or execute other agreements or premium financing agreements in

-2-

connection with their Insurance Policies, including, without limitation, upon the expiration or termination of any Insurance Policy.

5.    All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.    Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

7.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

8.    Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Policies.

9.    Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of

any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

10.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

11.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

12.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

13.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:    _____, 2020
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit C

**List of Insurance Policies**

**Debtors' Insurance Policies**

| Insurance Company | Policy Number | Type of Policy | Policy Term |
|---|---|---|---|
| AXA SEGUROS SA DE CV | GJA023860501 | PROPERTY & CASUALTY | 7/1/2020-7/1/2021 |
| AXA SEGUROS SA DE CV | GJA028370100 | PROPERTY & CASUALTY | 7/1/2020-7/1/2021 |
| AXA SEGUROS SA DE CV | XJ1000300600 | TERRORISM | 7/1/2020-7/1/2021 |
| CHUBB SEGUROS MEXICO SA | 42093 | DIRECTORS AND OFFICERS | 12/31/2019-12/31/2020 |
| ARTHUR J GALLAGHER | 3450661 | LIABILITY | 5/19/2020-5/20/2021 |
| GRUPO NACIONAL PROVINCIAL SAB | 64235 | VEHICLE | 12/1/2019-12/1/2020 |
| HISCOX | GD06074 | OTHER | 11/14/2019-11/13/2022 |
| MAPFRE MEXICO SA | 3601900000123 | EXCESS LIABILITY AVIATION | 12/1/2019-12/1/2020 |
| MAPFRE MEXICO SA | 3601900000124 | HULL ALL RISK AVIATION | 12/1/2019-12/1/2020 |
| MAPFRE MEXICO SA | 3601900000126 | HULL WAR AVIATION | 12/1/2019-12/1/2020 |
| MAPFRE MEXICO SA | 3601900000127 | HULL DEDUCTIBLES AVIATION | 12/1/2019-12/1/2020 |
| MAPFRE MEXICO SA | 3601900000128 | HULL DEDUCTIBLE AVIATION | 12/1/2019-12/1/2020 |
| MAPFRE MEXICO SA | 3601900000129 | GROUND HANDLING OPERATORS LIABILITY | 12/1/2019-12/1/2020 |
| TRAVELERS PROPERTY CASUALTY CO OF AMERICA | KTJ6307304L629TIL18 | PROPERTY (USA) | 11/10/2019-11/10/2020 |
| TRAVELERS PROPERTY CASUALTY CO OF AMERICA | BA6N27667A | AUTOMOBILE (USA) | 11/10/2019-11/10/2020 |