DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Timothy Graulich
James I. McClammy
Stephen D. Piraino (*pro hac vice* pending)

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.*, | **Case No. 20-11563(_)** |
| Debtors.[1] | **(Joint Administration Pending)** |

**MOTION OF DEBTORS FOR AN ORDER AUTHORIZING (I) DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS, (II) EMPLOYEES AND RETIREES TO PROCEED WITH OUTSTANDING WORKERS' COMPENSATION CLAIMS AND (III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Grupo Aeroméxico S.A.B. de C.V. ("**Grupo Aeroméxico**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"; the Debtors collectively with their direct and indirect non-Debtor subsidiaries, the "**Company**" or "**Aeroméxico**") hereby move (this "**Motion**") this Court for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "**Interim Order**" and

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

the "**Final Order**," respectively), granting the relief described below.  In support thereof, the Debtors refer to the contemporaneously-filed *Declaration of Ricardo Javier Sánchez Baker in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Sánchez Declaration**") and further represent as follows:

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C.  §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C.  § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Background

2.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, the United States Trustee for the Southern District of New York (the "**U.S.  Trustee**") has not appointed a statutory committee of creditors in these chapter 11 cases, nor has the Court appointed a trustee or examiner therein.

3.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

4.       The Debtors and their direct and indirect subsidiaries constitute the largest airline in Mexico and are collectively known as Mexico's "global airline," providing public air carrier services for passengers and goods (including fleet and cargo services) in and outside of Mexico and services related to such air operations.  The Debtors are one of the four founding members of the SkyTeam airline alliance, and their businesses include Aeroméxico, Aeroméxico Connect, Aeroméxico Cargo and Aeroméxico Servicios.   Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the *Sánchez Declaration*, filed contemporaneously herewith.

<u>**Relief Requested**</u>

5.       By this motion (the "**Motion**"), and pursuant to Bankruptcy Code sections 105(a), 362(d) and 363(b), the Debtors seek entry of the Interim Order and Final Order, substantially in the forms attached hereto, (a) authorizing, but not directing, the Debtors to pay, in their sole discretion, all or a portion of the amounts owing (and associated costs) under or related to Wages, Executive VP Compensation, Withholding Obligations, Reimbursement Obligations, Relocation Obligations, Health and Welfare Plan Obligations, Vacation Obligations, S&A Obligations, Retirement Plans, Supplemental Savings Plans, Savings Plans, Severance Obligations, Workers' Compensation Obligations, Financing Agreement Payments, Contingent Workers Obligations, Non-Insider STIP Obligations and Other Employee Programs (each as individually defined below and, collectively, the "**Prepetition Employee Obligations**"), (b) unless otherwise set forth herein, authorizing, but not directing, the Debtors to continue, in their sole discretion, their plans, practices, programs and policies for their Employees and Retirees (each as defined below), as those plans, practices, programs and policies were in effect as of the Petition Date and as may be modified, terminated, amended or supplemented in the ordinary course of business from time to time, in their sole discretion, and to make payments

pursuant to such plans, practices, programs and policies in the ordinary course of business, as well as to pay related administrative obligations, (c) permitting Employees and Retirees holding claims under the Workers' Compensation Programs to proceed with such claims in the appropriate judicial or administrative fora and to permit insurers to continue to access collateral and security provided by the Debtors pursuant to the Workers' Compensation Programs (as defined herein) and (d) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks drawn on the Debtors' payroll and general disbursement accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing.

6.      By seeking the authorization requested herein, it should not be presumed that the Debtors have determined, at this time, which of the Prepetition Employee Obligations they will pay or honor, nor should any party rely on this Motion as to any specific claim or benefit.

### Background Specific to Motion

7.      The Debtors are in the unfortunate position of having to file these chapter 11 cases as a result of the COVID-19 pandemic.  As set out in the Sánchez Declaration, the COVID-19 pandemic has resulted in an instantaneous and near-complete shutdown of the Debtors' passenger transport business.  Like many other airlines facing the pandemic, the Debtors have substantially reduced their workforce expenses, both by choosing not to renew contracts for certain temporary workers and by relying on voluntary unpaid leave or voluntary wage reductions.  Notably, thanks to other substantial cost-savings efforts, the Debtors have not been required to resort to layoffs, despite virtually non-existent air travel.  That the Debtors have not resorted to layoffs reflects the Debtors belief that the skills and experience of their employees, as well as the employees' relationships with customers and vendors and their institutional knowledge, are critical to the Debtors' ability to effectively operate their businesses.

8.      Although considerable uncertainty remains with respect to global and local travel restrictions, based on currently available information, the Debtors are hopeful that they will be in a position to bring back much of their workforce full-time and end voluntary wage reductions during these chapter 11 cases.  In order to maintain morale and ensure that the employees will return to work for the Debtors and not seek employment elsewhere, the Debtors request the authority to pay and honor certain prepetition claims and obligations to all of their employees, including wages due under the employment agreements.[2]

9.      Absent the relief requested, the Debtors' employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are necessary to enable the employees to meet their personal financial obligations.  Moreover, based on the centrality of employee issues in past airline bankruptcies, the Debtors believe that, absent the requested relief, the stability of the business operations and the success of these chapter 11 cases will be undermined.

10.     In light of the foregoing, the Debtors request the authority to pay various amounts as described herein (including on account of wages, benefits, sick time, vacation time and other paid time off, and severance) payable to, or otherwise earned in the ordinary course of business by, the Debtors' employees.  With respect to certain benefits representing prepetition accruals, but subject to applicable law, the Debtors reserve the right to allow employees to use such benefits only in the ordinary course of business and not to cash out any such prepetition benefits upon termination of employment or otherwise.  The Debtors further reserve the right, but subject to applicable law, to limit the amount paid to employees on account of such benefits.  The relief

---

[2] For the avoidance of doubt, the Debtors are not seeking to pay any prepetition claims and obligations arising solely from the voluntary wage reductions described herein and in the Sánchez Declaration.

requested in this Motion is without prejudice to the Debtors' right to seek to discontinue or modify any compensation and/or benefit programs during these chapter 11 cases.

## Prepetition Employee Obligations

**A.    Wages, Salaries and Other Compensation**

11.    Collectively, the Company employs approximately 12,000 people in an active status, which includes 8,200 such employees employed by the Debtors.[3]  These employees work in both full and part-time positions, including pilots, flight attendants, dispatchers, mechanics, aviation maintenance support personnel, supervisors, managers, and administrative support staff (together with current members of the Debtors' boards of directors, the "**Employees**").

12.    As of the beginning of the year, the Company had approximately 16,700 employees, including approximately 1,900 temporary workers whose contracts the Company chose not renew upon their expiration.  With respect to the remaining approximately 14,800 Employees, since March, as a result of the COVID-19 pandemic, the Employees have agreed to consensual salary reductions of up to 50% for approximately 20% of the their Employees every 14 days with the aim of being assured to pay their Employees through August 2020.  The Company have undertaken further efforts to avoid the need to terminate Employees include the cancellation of overtime and the repatriation of nine Employees on international assignments.

13.    Approximately 67% of the Employees participate in at least one of a multitude of collective bargaining agreements with the Company of varying duration and terms (the "**CBAs**").  There are currently four trade unions representing Mexican employees: (1) the

---

[3] In addition, approximately 3000 of the Company's Employees are on furlough, long-term disability, military leave, some form of personal leave or otherwise in an inactive status.  While such Employees are not receiving wages, some may be receiving other benefits, including, but not limited to, disability payments from health and welfare benefit plans, workers' compensation benefits from state-mandated programs, severance benefits, continuation of medical benefits and/or certain life insurance benefits, depending on the type of leave and/or years of service.

Mexican Trade Union Association of Air Pilots (ASPA); (2) the National Union of Workers in the Service of Air Lines, Transport, Services, Similar and Related (Independencia); (3) the Mexican Aviation Oversight Union Association (ASSA); and (4) the Union of Workers of the Aeronautical Industry Communications, Similar and Correlated of the Mexican Republic (STIA), (collective, the "**Unions**").  The Debtors have also entered into CBAs with unions in Argentina, Brazil, Spain, and France.  The Debtors have no CBAs with unions in the United States.

14.     Since March 27, 2020, the Company has also worked with their Unions to modify the CBAs.  Modifications with the ASPA include a 50% wage reduction, as well as a rotational leave of absence for 14% of the ASPA members.  Approximately 65% of the Debtors' flight attendants are on a rotational leave of absence.  As a result of these and other labor modifications, the Debtors have saved approximately 50% in labor costs from March 2020 to the Petition Date.

15.     The Debtors' employees are indispensable to the Company's success and the Debtors understand that a permanent substantial pay cut is unsustainable.  The salaries were temporarily reduced as an accommodation by employees, and the Debtors will suffer extraordinary departures if the reductions last indefinitely.  As such, the Debtors will likely resume more normal prospective compensation during the course of the case.  The Debtors will not, however, seek to repay any Wages attributable to the prepetition period in excess of $4,000,000 without further order of the Court.

16.     The Debtors maintain their headquarters in Mexico City, Mexico, where a majority of their corporate and administrative employees reside, but they also have employees

located across Mexico, and in 20 other countries worldwide,[4] including 87 employees working across 12 states in the United States.  Approximately 98% of the Employees are based in Mexico.  Employees in the United States account for approximately 1% of the Employees, and the remaining 1% are spread across the Debtors' international locations.

17.    The Debtors pay Employees' wages and salaries (collectively, the "**Wages**") under a number of different pay cycles.  The overwhelming majority of the Employees are paid on either a fortnightly or semi-monthly basis, with approximately 200 Employees in the Debtors' international locations paid on a monthly basis.

18.    The Debtors' average monthly gross payroll is approximately $24,450,000.  The Debtors estimate that as of the Petition Date they owe approximately $4,000,000 in Wages to Employees.

19.    The Debtors do not believe that any individual is owed prepetition Wages that, together with prepetition Vacation Obligations and S&A Obligations (both defined below), would exceed the $13,650 cap pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code, and the Debtors will not pay any individual prepetition Wages that, together with prepetition Relocation Obligations, prepetition Vacation Obligations, and prepetition S&A Obligations, would exceed such cap prior to entry of an order granting the relief requested herein on a final basis.

20.    Employees at the executive level are paid base salary on a bi-weekly basis ("**Executive VP Compensation**").    13% of executive base salary is contributed to the

_____

[4] The Debtors have Employees in Argentina, Brazil, Canada, Chile, Colombia, Costa Rica, Dominican Republic, Ecuador, El Salvador, France, Guatemala, Honduras, Japan, Mexico, Nicaragua, Peru, South Korea, Spain, the Netherlands, the United States, and the United Kingdom.

Supplemental Savings Plan, paid out at year end (further described below). Employees at this level also receive other perquisites, such as a car assignment and gasoline coupons.

21.      As part of the Debtors' strategic partnership with Delta Air Lines, Inc. ("**Delta**"), the Debtors also benefit from 16 secondees, including at the management level, on a three-year secondment from Delta pursuant to a Joint Cooperation Agreement, dated March 27, 2015 (the "**Secondees**")[5]. These Secondees include, for example, the Debtors' Chief Operating Officer and Chief Commercial Officer. By the terms of the Secondment Agreements, the Secondees report to and work under the direction, management, and supervision of the Debtors' Chief Executive Officer or other such individuals that the Debtors designate, and all actions of the Secondee are performed in service to the Debtors. The Debtors cannot terminate the Secondees' employment, but may terminate the secondment. Secondees' salary and benefits are paid by Delta; as provided in each Secondee's respective secondment agreements, the Debtors have "no obligation whatsoever to pay compensation or provide benefits of any kind to [the Secondees]." Accordingly, though the Debtors' estates will unquestionably benefit from the service of the Secondees, the Debtors currently require no relief with respect to the Secondees pursuant to this motion.[6]

## B.      Withholding Obligations

22.      The Debtors routinely withhold from Employees' wages certain amounts that the Debtors are required to transmit to third parties for various purposes (collectively, the "**Withholding Obligations**").

---

[5] For the avoidance of doubt, the Secondees are not considered "Employees" for purposes of this Motion.

[6] The Debtors reserve the right to assume or reject the Joint Cooperation Agreement, but intend to continue to perform thereunder on a post-petition basis until such decision is made.

| Withholding Obligation | Estimated Amount Per Payroll Period | Estimated Amount Accrued & Unpaid as of the Petition Date | Estimated Amount Coming Due in the first 30 Days |
|---|---|---|---|
| Employee Taxes | $3,600,000 | $17,700,000 | $15,400,000[7] |
| Union Dues | $70,000 | $3,400,000 | $300,000 |
| Voluntary Health Insurance | $100,000 | $0 | |
| Pension Funds | $150,000 | $0 | |
| Savings Bank | $500,000 | $0 | |
| Other Withholdings | $10,000 | $100,000 | |

23.    In addition, certain of the Employees are unionized (the "**Union Employees**"). In exchange for benefits under the relevant CBA, Union Employees are required to pay membership dues to the Unions. The cost of such membership dues are deducted from each Union Employee's wages and are paid directly to the applicable union bi-weekly. The Debtors pay approximately $1.5 million per month to the Unions for all Union Employees', including union fees and other Union Employee benefits. The benefits which are not paid directly to the pilots but disbursed through ASPA and owed by the Debtors, were deferred for April through June. The Debtors will start paying the outstanding balance of membership dues of $3,400,000 in twelve installments starting in July 2020.

24.    The Debtors believe that Withholding Obligations, to the extent that they were in the Debtors' possession as of the Petition Date and/or remain in the Debtors' possession, are not property of the Debtors' bankruptcy estates. Nonetheless, out of an abundance of caution, the Debtors are seeking authority to pay any prepetition amounts, solely out of an abundance of caution, and to continue to pay Withholding Obligations on a post-petition basis in the ordinary course of business and consistent with past practices.

---

[7] This number also includes employer withholding obligations.

C.     **Business Expense Reimbursement**

25.     The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their business duties on behalf of the Debtors.  These reimbursement obligations include lodging, transportation, meals, customer entertainment expenses, professional courses and seminars, membership dues for professional organizations and other miscellaneous business expenses (collectively, the "**Reimbursement Obligations**"). Employees who are part of the crew labor are entitled to per diem expenses in cash, which are calculated on a fixed amount after signing in for a mission.  The Debtor approximately spends $5.4 million on a monthly basis (based on the March operating schedule), although due to a decrease in travel since March, this number is currently reduced.

26.     It is difficult for the Debtors to determine the exact amount of Reimbursement Obligations outstanding at any particular time because of the generally unpredictable and irregular nature of the Reimbursement Obligations.  The Debtors generally pre-pay travel expenses directly on behalf of Employees, although a small number of individuals also use a company credit card to pay for business-related expenses.  Accordingly, the amount that the Debtors pay in Reimbursement Obligations is generally small.  This is particularly true given the global shutdown resulting from the COVID-19 pandemic.  The Debtors believe that they are current on all Reimbursement Obligations, but may have *de minimis* amounts outstanding.

27.     The Reimbursement Obligations were incurred on the Debtors' behalf and with the understanding that they would be reimbursed.  Accordingly, to avoid harming individuals who incurred such Reimbursement Obligations in the course of their job performance, the Debtors seek authority, but not direction, to (a) pay any outstanding prepetition Reimbursement Obligations and  (b) continue  during  the  course  of  these  chapter  11  cases  to  pay  the

Reimbursement Obligations in the ordinary course of business and in accordance with prepetition practices.

**D.    Relocation Benefits**

28.    The Debtors also offer relocation benefits to Employees who relocate at the request of the Company in furtherance of the Company's business needs (the "**Relocation Obligations**").    The Debtors estimate that as of the Petition Date they owe approximately $215,000 in Relocation Obligations.

29.    As such, the Debtors seek authority to pay any prepetition amounts due and payable, and to continue to pay the Relocation Obligations on a post-petition basis in the ordinary course of business and consistent with past practices.

**E.    Health and Welfare Benefits**

30.    The Debtors offer several health and welfare benefit plans (collectively, the "**Health and Welfare Plans**") for all Union and non-union Employees, certain former employees and certain retirees (the "**Retirees**"), in Mexico[8], the United States, Canada, and various other countries in which the Debtors have Employees including major medical expense insurance, life insurance, dental insurance, travel benefits, a defined benefit retirement plan, and social security contributions (collectively, the "**Health and Welfare Plan Obligations**"). Certain Health and Welfare Plans are administered by third-parties that, among other things, process and administer claims and seek reimbursement for compensable claims from the Debtors.  Because of the manner in which such expenses are incurred and claims are processed under the Health and Welfare Plans, it is difficult for the Debtors to determine the extent of their obligations under the Health and Welfare Plans outstanding at any particular time.  Based on

---

[8] There are no Health and Welfare Plans for Retirees in Mexico

historical experience, the Debtors estimate that the cost of maintaining the Health and Welfare Plans is approximately $1,200,000 per month.  By this Motion, the Debtors seek authority, but not direction, to continue the Health and Welfare Plans in the ordinary course of business, and to pay any prepetition expenses or other amounts related thereto, including any claims incurred before the Petition Date, but reported after the Petition Date.

**F.       Vacation Policy and Sick Leave**

31.     All Employees are statutorily eligible for paid vacation (the "**Vacation Obligations**").  Pursuant to the Debtors' vacation policies, eligible Employees are paid their regularly scheduled full or part time wage, for each vacation day, up to the maximum number of days accrued.  Accrual of vacation days is based on years of service and role within the Company.  Employees must use their allocated vacation days within one year or they receive the vacation premium in lieu thereof.  The Company pays a vacation premium on a similar scheme, either at or above the 25% premium mandated by Mexican law.  In 2019, the Debtors paid approximately $14,400,000 of Vacation Obligations.  Additionally, Employees who are members of the crew labor are paid a vacation bonus.  During 2019, the Debtors spent approximately $2,800,000 million on vacation bonuses.

32.     The Debtors also provide sickness and accident benefits to certain non-represented and represented Employees (collectively, the "**S&A Obligations**").  The Debtors' main major medical expense insurance covers eligible Employees and beneficiaries up to $100 million MXN per event, with a $7,820 MXN deductible, as well as an annual hospital checkup. The Debtors estimate that annual S&A Obligations total approximately $10,200,000.

**G.      Savings Plans, Pension Plans and Non-Medical Retirement Obligations**

33.     In certain non-U.S. jurisdictions, the Debtors make contributions to savings, social security and pension funds (the "**Retirement Plans**").  The Debtors estimate that the total

amount of unpaid prepetition contributions to the Retirement Plans is approximately $193,000,000.

34.    In addition the Debtors maintain a supplemental, non-qualified savings plan (the "**Supplemental Savings Plan**") for certain salaried employees.  For example, the Debtors withhold a portion of Mexican Employees' salaries each pay cycle to pay out to the Employees at year end, with a matching component.

35.    The Debtors maintain a qualified plan for certain represented Employees (the "**Savings Plans**").  The Debtors estimate that the monthly matching contributions to the Savings Plan to be approximately $1,000,000.

36.    By this Motion, the Debtors seek authority, but not direction, to continue the Savings Plans, Supplemental Savings Plans, and Retirement Plans and make any payments attributable to the such plans, including any that accrued prepetition, in each case in the ordinary course of business.

**H.    Severance**

37.    The Debtors have certain obligations under their severance programs (the "**Severance Obligations**").    Under Mexican law, the Debtors, as the case may be, are mandatorily required to pay an amount equal to three months' salary as legal severance, as well as an additional amount equal to 20 days salary for each completed year of service to the employer.  Pursuant to Mexican insolvency law (public policy law) and the Mexican Federal Constitution, certain labor claims have priority over all other categories of claims.  Once an Employee has worked for more than ten years, fulfilled the Mexican Social Security's requirements, and is over the age of 65, the Employee may request his or her retirement pension under Mexican law, which is tax-beneficial for the employee.

38.     As of the Petition Date, the Debtors estimate that their prepetition outstanding Severance Obligations total approximately $301,600,000.

39.     By this Motion, the Debtors seek authority, but not direction, to continue the Severance Obligations and make any payments attributable to the Severance Obligations, including any that accrued prepetition, in the ordinary course of business.

## I.     Workers' Compensation Program

40.     Mexican law does not require worker's compensation insurance for its Employees in Mexico.[9]  However, under applicable law in non-Mexican countries, the Debtors are required, through self-insurance or third-party insurers, to provide Employees and Retirees with workers' compensation insurance coverage for claims arising from or related to their employment (together with supplemental medical insurance for its Mexican Employees, the "**Workers' Compensation Programs**"), and to satisfy the Debtors' obligations arising under or related to these programs (the "**Workers' Compensation Obligations**").   The domestic Workers' Compensation Programs cost approximately $117,575 annually.  The average monthly cost of Workers' Compensation Obligations paid by the Debtors is approximately $10,000, which is inclusive of the approximately $14,600 in premium financing arrangement fees.

41.     By this Motion, the Debtors seek authority, but not direction, to continue the Workers' Compensation Programs and make any payments attributable to the Workers' Compensation Programs, including any that accrued prepetition, in the ordinary course of business.

42.     The premiums for the Workers Compensation Program in the United States is currently financed pursuant to a premium financing agreement with IPFS Corporation

---

[9] The Debtors do provide supplemental medical insurance for their Mexican Employees.

("**IPFS**").  The Debtors remit monthly payments of approximately $10,000 relating to this program ("**Financing Agreement Payments**"), which results in an annual interest rate of 4.23%. The Debtors believe that approximately $20,000 in Financing Agreement Payments that were due and payable on or prior to the Petition Date are outstanding.  The Debtors seek authority, but not direction, to satisfy any such prepetition Financing Agreement Payments.  Additionally, The Debtors seek authority, but not direction, to enter into other premium financing agreements as necessary or appropriate in the ordinary course of their business, without further Court approval.

**J.    Contingent Workers**

43.    From time to time, the Debtors use the personal services of individuals employed by, and provided through, staffing agencies and of individuals providing personal services directly as independent contractors (collectively, the "**Contingent Workers**").  Such services are necessary to the operation of the Debtors' businesses.  The Contingent Workers include, but are not limited to, operational, IT, janitorial, and security staff.  Payments to the Contingent Workers (collectively, the "**Contingent Workers Obligations**") vary according to the terms of the Contingent Workers' individual contracts with the Debtors or according to the terms of the Debtors' contract with the appropriate staffing agencies.  In the United States, many of these services are rendered by Delta.  It is difficult for the Debtors to determine the total accrued and unpaid prepetition obligations to the Contingent Workers because of the generally unpredictable and irregular nature of the obligations.

**K.      Bonus Plans**[10]

44.      Certain of the Debtors also maintain annual bonus plans.  The Debtors pay between 15 and 30 days salary as a holiday bonus, depending on an Employee's seniority and position.[11]

45.      The Debtors also provide short-term incentive plans.  In the ordinary course of business, the Debtors offer awards under a short-term incentive plan (the "**STIP**") to certain Employees for the purpose of providing Employees with a direct financial incentive in meeting certain financial goals and other departmental objectives identified by the Debtors.  Each Employee's STIP opportunity is based on his or her role and position within the Debtors' businesses and is earned at the company-wide and individual employee levels.  The STIP is based on metrics related to EBIT, MBR (baggage handling), timely departures, and route completion.

46.      The STIP is earned over the course of a calendar year and paid during February of the following calendar year.  The Debtors seek authority in this Motion to make payments under the STIP to non-insider Employees (collectively, the "**Non-Insider STIP Obligations**") for employee performance during the calendar year 2020.  The Debtors estimate that the Non-Insider STIP Obligations accrued thus far for the calendar year 2020 due to be paid on February 2021 will total approximately $4,200,000.

**L.      Other Employee Programs**

47.      In addition to the foregoing, the Debtors have in place miscellaneous practices, programs and policies that provide benefits and protections to various groups of Employees,

---

[10] The Debtors also maintain retention programs and an annual performance-based incentive plan program in the ordinary course of business.  The Debtors do not expect that any amounts will be due under these programs in the first several weeks after the Petition Date.  Accordingly, the Debtors intend to seek Court approval to continue these programs at a later date by separate motion.

[11] Mexican law requires 15 days for holiday bonuses.

including, but not limited to, food vouchers, scholarship funds and car reimbursements (collectively, the "**Other Employee Programs**"). The Debtors believe that the Other Employee Programs are important to maintaining Employee morale and assisting in the retention of the Debtors' workforce.

48.    By this Motion, the Debtors seek authority, but not direction, to continue the Other Employee Programs and make any payments attributable to the Other Employee Programs, including any that accrued prepetition, in the ordinary course of business.

## **Basis for Relief**

### A.    **Cause Exists to Authorize Paying the Prepetition Employee Obligations**

49.    Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, an individual's claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtors for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are each afforded unsecured priority status of $13,650 per employee. Furthermore, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code further provides, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

50.    The Debtors believe that many of their Prepetition Employee Obligations constitute priority claims. The Debtors submit that payment of these Prepetition Employee Obligations, is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the

existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

51.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. "Under 11 U.S.C. § 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." *In re NVR L.P*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177). Furthermore, Bankruptcy Rule 6003 permits the payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

52.     In a long line of well-established cases, federal courts have consistently permitted post-petition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.    *See*, *e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S.   286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Mich.  Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits).

53.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of

critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).   The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.   The court in *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"   The court stated that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id.* at 932.   Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

54.    Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

55.     The business judgment rule is satisfied "when the following elements are present:
(1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to
some courts and commentators, no abuse of discretion or waste of corporate assets." *Official
Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147
B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (internal quotations
omitted). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as
distinct from a decision made arbitrarily or capriciously), courts will generally not entertain
objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v.
Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).
Courts in this district have consistently and appropriately been loath to interfere with corporate
decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a
board's decisions as long as they are attributable to any "rational business purpose." *In re
Integrated Res. Inc.*, 147 B.R. at 656.

56.     The Debtors submit that the requested relief represents a sound exercise of the
Debtors' business judgment, is necessary to avoid immediate and irreparable harm, and is
justified under section 363(b), as well as under section 105(a) of the Bankruptcy Code and
Bankruptcy Rule 6003. This is because any delay in paying Prepetition Employee Obligations
will adversely impact the Debtors' relationships with their Employees and could irreparably
impair the Employees' morale, dedication, confidence and cooperation. Moreover, Mexican
Federal Labor Law (*Ley Federal del Trabajo*) and the general labor regulations issued by the
Mexican Ministry of Labor and Social Prevention (S*ecretaría del Trabajo y Previsión Social*),
govern, as a matter of public policy, issues such as employees' hours and working conditions,
health risks, fringe benefits and the dismissal of employees. Under such laws and regulations,

the Debtors have mandatory obligations to pay severance and seniority premiums to employees who cease rendering services under certain circumstances, and are subject to other obligations derived from labor agreements.  The Debtors' businesses hinge on their relationships with their customers, and the ability to provide superior services is vital.  The Employees' support for the Debtors' reorganization efforts is critical to the success of those efforts.  At this early stage, the Debtors simply cannot risk the substantial damage to their businesses that would inevitably attend any decline in their Employees' morale and performance attributable to the Debtors' failure to pay wages, salaries, benefits and other similar items, such as holiday bonuses, vacation bonuses, overtime salary, Sunday premiums, food and lodging expenses, savings funds, productivity bonus and seniority premiums.

57.     Absent an order granting the relief requested, many Employees will undoubtedly suffer hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtors will be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment alternatives. Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

58.     In the overwhelming majority of recent large chapter 11 cases, courts have approved payment of employee prepetition claims for compensation, benefits and expense reimbursements similar to those described herein.  *See, e.g.*, *In re Avianca Holdings, S.A.*, Case No 20-1113 (MG) (Bankr.  S.D.N.Y. June 17, 2020) [Docket No. 291]; *In re LATAM Airlines Group S.A.*, Case No.  20-11254 (JLG) (Bankr. S.D.N.Y. May 28, 2020) [Docket No. 51]; *In re Sabine Oil & Gas Corporation*, Case No.  15-11835 (SCC) (Bankr. S.D.N.Y. July 16, 2015) [Docket No. 148]; *In re Chassix Holdings, Inc.*, Case No.  15-10578 (MEW) (Bankr. S.D.N.Y.

Mar. 13, 2015) [Docket No. 254]; *In re NII Holdings, Inc.*, Case No 14-12611 (SCC) (Bankr. S.D.N.Y. Sept. 16, 2014) [Docket No. 94]; *In re Genco Shipping & Trading Ltd.*, Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. May 8, 2014) [Docket No. 33]; *In re Pinnacle Airlines Corp.,* Case No. 12-11343 (REG) (Bankr. S.D.N.Y. Apr. 2, 2012) [Docket No. 35]; *In re Eastman Kodak Co.,* Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 20, 2012) [Docket No. 55]; *In re AMR Corp.,* Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011) [Docket No. 52]; *In re Mesa Air Group, Inc.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y. Feb. 23, 2010) [Docket No. 36]; *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. Apr. 14, 2008) [Docket No. 52]; *In re Delta Air Lines, Inc.,* Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005) [Docket No. 150].

**B.      The Automatic Stay Should be Modified as it Applies to Employees' and Retirees' Claims Under the Workers' Compensation Programs**

59.      It is imperative that the Debtors be permitted to continue to pay and/or honor any and all Workers' Compensation Obligations, including all prepetition premiums, claims (including claim settlements), losses and expenses in connection with their Workers' Compensation Obligations and to pay all costs and expenses associated with the Workers' Compensation Programs, including such costs and expenses related to administration, servicing, processing, adjusting, paying and settling claims and losses under these programs.  In connection with their Workers' Compensation Obligations, the Debtors also seek authority for the insurers to continue to use collateral and security, as provided under the Workers' Compensation Programs, without further order of the Court.

60.      It is crucial for employee morale and the operations of the Debtors' businesses for the Debtors to continue to pay workers' compensation benefits and honor their obligations under the Workers' Compensation Programs described herein.  As described in the Sánchez

Declaration, the Debtors anticipate that they will file a motion seeking approval of a secured

debtor-in-possession financing and will have sufficient liquidity to continue operations in the

ordinary course, which is in the best interests of the Debtors, their estates and their creditors.  *See*

Sánchez Decl. at paragraph 75.

61.    Section 362(a) of the Bankruptcy Code, commonly known as the automatic stay,

operates to stay, among other things:

> the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other
> action or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title.

Section 362, however, permits a debtor or other parties in interest to request a modification or

termination of the automatic stay for "cause."  11 U.S.C.  § 362(d)(1).

62.    To the extent any of the Employees or Retirees hold claims pursuant to the

Workers' Compensation Programs, the Debtors seek authorization under section 362(d) of the

Bankruptcy Code, in the Debtors' sole discretion, to permit such Employees or Retirees to

proceed with such claims in the appropriate judicial or administrative fora.  The Debtors believe

cause exists to grant them authority to modify the automatic stay, where the Debtors deem it

appropriate to do so, because staying such claims could have a detrimental effect on the financial

(and medical) well-being and morale of the Debtors' Employees and Retirees and lead to the

departure of certain Employees.  Such departures could cause a severe disruption in the Debtors'

businesses, to the detriment of all parties in interest.  To this end, the Debtors seek an order

granting (a) relief from the automatic stay as it relates to Employee and Retiree claims under the

Workers' Compensation Programs and the insurers' continued use of collateral and security

provided by the Debtors pursuant to the Workers' Compensation Programs and (b) waiver of the corresponding notice requirements under Bankruptcy Rule 4001(d).

63.     Pursuant to this Motion, the Debtors do not seek a waiver, termination or modification of the automatic stay with respect to any other claims.

## C.     Applicable Banks Should be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay the Prepetition Employee Obligations

64.     The Debtors also request that all applicable banks and other financial institutions be authorized to (a) receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date and (b) rely on the Debtors' designation of any particular check as approved by order of the Court.

### Debtors Have Satisfied Bankruptcy Rule 6003(b)

65.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of filing a petition. Irreparable harm "is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotations omitted). The "harm must be shown to be actual and imminent, not remote or speculative." Id.

66.     As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations and going-concern value. Accordingly, the Debtors submit

that the relief requested herein is necessary to avoid immediate and irreparable harm, and that Bankruptcy Rule 6003(b) is satisfied.

## **Request for Waiver of Stay**

67.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the fourteen (14) day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Sánchez Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent the notice requirement and stay apply.

## **Notice**

68.     Notice of this Motion will be provided to (a) the U.S.  Trustee, (b) each of the Debtors' 30 largest unsecured creditors on a consolidated basis, (c) each of the Debtors' five largest secured creditors on a consolidated basis, (d) the Internal Revenue Service, (e) the United States Attorney's Office for the Southern District of New York, (f) the Federal Aviation Administration and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 and (collectively, the "**Notice Parties**").  A copy of this Motion and any order approving it will also be made available on the Debtors' Case Information Website located at https://dm.epiq11.com/aeromexico.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

## **Reservation of Rights**

69.     Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as (a) an admission as to the validity or priority of any claim against the

Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Previous Request

70.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed forms

of order, substantially in the forms attached hereto, granting the relief requested herein and such

other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 30, 2020

              DAVIS POLK & WARDWELL LLP

              By: */s/ Timothy Graulich*

              450 Lexington Avenue
              New York, New York 10017
              Tel: (212) 450-4000
              Fax: (212) 607-7983
              Marshall S. Huebner
              Timothy Graulich
              James I. McClammy
              Stephen D. Piraino (*pro hac vice* pending)

              *Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.*, | **Case No. 20-11563(_)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

### INTERIM ORDER AUTHORIZING (I) DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS, (II) EMPLOYEES AND RETIREES TO PROCEED WITH OUTSTANDING WORKERS' COMPENSATION CLAIMS AND (III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Grupo Aeroméxico, S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an interim order (this "**Order**") and a final order (a) authorizing, but not directing, the Debtors to pay, in their sole discretion, all or a portion of the amounts owing (and associated costs) under or related to the Prepetition Employee Obligations, (b) unless otherwise set forth herein, authorizing, but not directing, the Debtors to continue, in their sole discretion, their plans, practices, programs and policies for their Employees and Retirees, as those plans, practices, programs and policies were in effect as of the Petition Date and as may be modified, terminated, amended or supplemented in the ordinary course of business from time to time, in their sole

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

discretion, and to make payments pursuant to such plans, practices, programs and policies in the

ordinary course of business, as well as to pay related administrative obligations, (c) permitting

Employees and Retirees holding claims under the Workers' Compensation Programs to proceed

with such claims in the appropriate judicial or administrative fora and to permit insurers to

continue to access collateral and security provided by the Debtors pursuant to the Workers'

Compensation Programs and (d) authorizing applicable banks and other financial institutions to

receive, process and pay any and all checks drawn on the Debtors' payroll and general

disbursement accounts and automatic payroll and other transfers to the extent that those checks

or transfers relate to any of the foregoing, all as set forth more fully in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.

§§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28

U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the

Notice Parties, and it appearing that no other or further notice need be provided; and the Court

having reviewed the Motion and held a hearing to consider the relief requested in the Motion on

an interim basis (the "**Hearing**"); and upon the Sánchez Declaration, filed contemporaneously

with the Motion, and the record of the Hearing; and the Court having determined that the legal

and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and the Court having determined that immediate relief is necessary to avoid

irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003(b)

and is in the best interests of the Debtors, their estates, their creditors and all parties in interest;

and upon all of the proceedings had before the Court and after due deliberation and sufficient

cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted on an interim basis as set

forth herein.

2.      The Debtors are authorized, but not directed to, in their sole discretion, continue

to pay and honor their obligations arising under or related to their plans, practices, programs and

policies for their Employees and Retirees as set forth in the Motion, including, without

limitation, those giving rise to the Prepetition Employee Obligations (collectively, the

"**Employee Programs**"), as those Employee Programs were in effect as of the Petition Date and

as such Employee Programs may be modified, terminated, amended or supplemented from time

to time in the ordinary course of the Debtors' businesses (other than any payments that would

contravene section 503(c) of the Bankruptcy Code, including with respect to insiders); *provided*,

*however*, that Debtors will not repay any Wages attributable to the prepetition period in excess of

$4,000,000 without further order of the Court.

3.      The Debtors are authorized, in their sole discretion, to continue to administer the

Supplemental Savings Plan and Savings Plan; *provided* that any post-petition amounts

contributed to the Supplemental Savings Plan and Savings Plan shall be deemed administrative

expenses pursuant to section 503 of the Bankruptcy Code; *provided further* that nothing in this

Order authorizes the Debtors to make any payments on account of prepetition contributions to

the Supplemental Savings Plan or Savings Plan.

4.      The automatic stay is modified solely to the extent necessary to allow Employees

and Retirees to proceed with claims under the Workers' Compensation Programs in the

appropriate judicial or administrative fora, and the notice requirements under Bankruptcy Rule 4001(d) with respect to the above are waived.

5.      All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

7.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

8.      Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to any Prepetition Employee Obligation, including payroll taxes that may be due to any taxing authority.

9.      Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

10.     The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

11.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

12.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

13.     A final hearing to consider the relief requested in the Motion shall be held on _____, ____ at _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on the Notice Parties so as to be actually received on or prior to _____, ____at 4:00 p.m. (Prevailing Eastern Time).  Any objections or responses to the entry of the Final Order shall be: (a) filed with the Court and (b) served upon and actually received by (i) the United States Trustee, U.S.  Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq.), (ii) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Marshall S. Huebner, Timothy Graulich and Stephen D. Piraino) and (iii) counsel to any official committee then appointed in these chapter 11 cases, so as to be received by 4:00 p.m. (Prevailing Eastern

Time) seven (7) days before the hearing to approve the relief requested in the Motion on a final basis (the "**Objection Deadline**").  A reply to an objection may be filed with the Court and served on or before 12:00 p.m. (Prevailing Eastern Time) on the day that is at least two (2) business days before the date of the applicable hearing.  If no objections or responses are filed and served, this Court may enter the Final Order without further notice or hearing.

14.     If no objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Order, which order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the date of the commencement of these chapter 11 cases.

15.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

16.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:    New York, New York
          _____, 2020

                                                    _____
                                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | Case No. 20-11563(_) |
| Debtors.[14] | **(Joint Administration Pending)** |

### FINAL ORDER AUTHORIZING (I) DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS, (II) EMPLOYEES AND RETIREES TO PROCEED WITH OUTSTANDING WORKERS' COMPENSATION CLAIMS AND (III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[15] of Grupo Aeroméxico, S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an interim order and a final order (this "**Order**") (a) authorizing, but not directing, the Debtors to pay, in their sole discretion, all or a portion of the amounts owing (and associated costs) under or related to the Prepetition Employee Obligations, (b) unless otherwise set forth herein, authorizing, but not directing, the Debtors to continue, in their sole discretion, their plans, practices, programs and policies for their Employees and Retirees, as those plans, practices, programs and policies were in

---

[14] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[15] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

effect as of the Petition Date and as may be modified, terminated, amended or supplemented in the ordinary course of business from time to time, in their sole discretion, and to make payments pursuant to such plans, practices, programs and policies in the ordinary course of business, as well as to pay related administrative obligations, (c) permitting Employees and Retirees holding claims under the Workers' Compensation Programs to proceed with such claims in the appropriate judicial or administrative fora and to permit insurers to continue to access collateral and security provided by the Debtors pursuant to the Workers' Compensation Programs and (d) authorizing applicable banks and other financial institutions to receive, process and pay any and all checks drawn on the Debtors' payroll and general disbursement accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the Sánchez Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at

2

the Hearing establish just cause for the relief granted herein; and the Court having

determined that the relief granted herein is in the best interests of the Debtors, their

estates, creditors and all parties in interest; and upon all of the proceedings had before the

Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted on a final basis as set

forth herein.

2.      The Debtors are authorized, but not directed to, in their sole discretion,

continue to pay and honor their obligations arising under or related to their plans,

practices, programs and policies for their Employees and Retirees as set forth in the

Motion, including, without limitation, those giving rise to the Prepetition Employee

Obligations (collectively, the "**Employee Programs**"), as those Employee Programs

were in effect as of the Petition Date and as such Employee Programs may be modified,

terminated, amended or supplemented from time to time in the ordinary course of the

Debtors' businesses (other than any payments that would contravene section 503(c) of the

Bankruptcy Code, including with respect to insiders); *provided*, *however*, that Debtors

will not repay any Wages attributable to the prepetition period in excess of $4,000,000

without further order of the Court.

3.      The Debtors are authorized, in their sole discretion, to continue to

administer the Supplemental Savings Plan and Savings Plan; *provided* that any post-

petition amounts contributed to the Supplemental Savings Plan and Savings Plan shall be

deemed administrative expenses pursuant to section 503 of the Bankruptcy Code;

3

*provided further* that nothing in this Order authorizes the Debtors to make any payments on account of prepetition contributions to the Supplemental Savings Plan or Savings Plan.

4.    The automatic stay is modified solely to the extent necessary to allow Employees and Retirees to proceed with claims under the Workers' Compensation Programs in the appropriate judicial or administrative fora, and the notice requirements under Bankruptcy Rule 4001(d) with respect to the above are waived.

5.    All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.    Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

7.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor

4

of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

8.      Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to any Prepetition Employee Obligation, including payroll taxes that may be due to any taxing authority.

9.       Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

10.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

11.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

12.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

13.    This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:    New York, New York
              _____, 2020


_____
UNITED STATES BANKRUPTCY JUDGE

6