DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Timothy Graulich
James I. McClammy
Stephen D. Piraino (admitted *pro hac vice*)
*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | **Case No. 20-11563 (SCC)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF HEARING ON DEBTOR'S THIRD MOTION FOR ENTRY
OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH
TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**PLEASE TAKE NOTICE** that on June 8, 2021, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Third Motion for Entry of an Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (this "**Motion**"). A hearing on the Motion will be held on **June 22, 2021, at 10:30 a.m. (Prevailing Eastern Time)** (the "**Hearing**") before the Honorable Judge Shelley C. Chapman, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; and Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"),[2] the Hearing will be conducted telephonically.  Any parties wishing to participate must do so telephonically by making arrangements through CourtSolutions, LLC (www.court-solutions.com).  Instructions to register for CourtSolutions, LLC are attached to General Order M-543.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Epiq Corporate Restructuring, LLC at https://dm.epiq11.com/aeromexico.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.  The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

---

[2] A copy of the General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/general-order-m-543-court-operations-under-exigent-circumstances-created-covid-19.

and shall be served in accordance with General Order M-399 and the *Order Establishing Certain Notice, Case Management, and Administrative Procedures*, entered on July 8, 2020 [ECF No. 79], so as to be filed and received no later than **Friday, June 18, 2021 at 12:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

      **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to telephonically attend the Hearing, and failure to appear may result in relief being granted upon default.

      **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

Dated:   June 8, 2021
        New York, New York

               DAVIS POLK & WARDWELL LLP

               By:  */s/ Timothy Graulich*

               450 Lexington Avenue
               New York, New York 10017
               Telephone: (212) 450-4000
               Facsimile:  (212) 701-5800
               Marshall S. Huebner
               Timothy Graulich
               James I. McClammy
               Stephen D. Piraino (admitted *pro hac vice*)

               *Counsel to the Debtors*
               *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Timothy Graulich
James I. McClammy
Stephen D. Piraino (admitted *pro hac vice*)
*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | **Case No. 20-11563 (SCC)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' THIRD MOTION FOR ENTRY OF AN ORDER EXTENDING**
**THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Grupo Aeroméxico S.A.B. de C.V. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") hereby file this *Debtors' Third Motion for Entry of an Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

**Relief Requested**

1.      By this Motion, and pursuant to section 1121(d) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of an order, substantially

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; and Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

in the form attached hereto as **Exhibit A** (the "**Proposed Order**" and, if entered, the "**Order**"), extending the Debtors' exclusive periods to (a) file (the "**Exclusive Filing Period**") a chapter 11 plan of reorganization (the "**Chapter 11 Plan**") by 122[2] days through and including Monday, October 25, 2021, and (b) solicit votes thereon (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**") by 120 days through and including Wednesday, December 22, 2021.  The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on Friday, June 25, 2021 and Tuesday, August 24, 2021, respectively.  The requested extensions would be without prejudice to the rights of the Debtors to seek further extensions of the Exclusive Periods.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] A 120-day extension of the Exclusive Filing Period would result in such period ending on Saturday, October 23, 2021.  Therefore the Debtors are requesting by this Motion that the Exclusive Filing Period be extended to the next business day after 120 days: Monday, October 25, 2021.

**Procedural Background**

4.        On June 30, 2020 (the "**Petition Date**"), the Debtors each commenced in this Court a voluntary case (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5.        The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6.        On July 13, 2020, the United States Trustee formed an Official Committee of Unsecured Creditors (the "**Creditors' Committee**") in the Chapter 11 Cases.  No trustee or examiner has been appointed in the Chapter 11 Cases.

7.        Detailed information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases, is set forth in the *Declaration of Ricardo Javier Sánchez Baker in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [ECF No. 20], filed with the Court on the Petition Date.

**The Debtors Have Made Substantial Progress in these Chapter 11 Cases**

8.        As the Court is aware, the Debtors commenced these Chapter 11 Cases in the throes of an unprecedented pandemic that has dramatically affected the Debtors' business and the entire global aviation industry.  Aeroméxico is the leading airline in Mexico and, pre-pandemic, was sufficiently capitalized to continue its operational initiatives and take advantage of its strategic partnerships.  However, among many other things, the pandemic caused, and continues to cause, severe travel restrictions, including the outright closure of borders, a severe decline in passenger demand, and significantly reduced flight operations.

9.        Notwithstanding the Debtors undertaking significant cost reduction and liquidity preservation measures to protect their business, the negative effects of the pandemic led to the

3

filing of these Chapter 11 Cases.  The Debtors commenced these Chapter 11 Cases to, among

other things, preserve value, reduce costs, and rationalize their fleet and workforce.

10.    Since this Court's second extension of the Exclusive Periods granted on February

17, 2021 [ECF No. 905], the Debtors have accomplished a great deal to narrow remaining issues,

advance these Chapter 11 Cases, and further the plan process, all while balancing the interest of

numerous constituencies, including:

(a) finalizing negotiations and comprehensive settlements with all of the Debtors' unionized labor groups to ensure a successful reorganization is possible, and obtaining court approval to enter into agreements relating to  such negotiations and settlements;

(b) analyzing issues and responding to filings related to the Debtors' loyalty program, and extensive negotiations with various constituencies in connection therewith;

(c) negotiating, and obtaining approval for, numerous agreements with various aircraft counterparties, resulting in the addition of new aircraft to the Debtors' fleet and the assumption of amended leases related to additional aircraft already in the Debtors' fleet;

(d) extensively negotiating, and obtaining approval for, severance packages for terminated employees, as required by Mexican law;

(e) commencing the Debtors' claims analysis, including expunging hundreds of claims from the claims registers and communications with stakeholders related thereto;

(f) negotiating the assumption of certain essential agreements with improved terms, including in relation to certain airport and related service providers;

(g) negotiating with several of the Debtors' creditors and stakeholders on various issues in hopes of reaching resolutions without the need for litigation;

(h) preparing for, and successfully arguing, numerous motions and applications at multiple hearings; and

(i) addressing, and continuing to address, extremely in-depth issues surrounding numerous diligence requests from various parties in interest while providing ever-increasing volume of relevant information.

11.    On October 13, 2020, the Court entered the *Final Order Granting Debtors'*

*Motion to (I) Authorize Certain Debtors in Possession to Obtain Post-Petition Financing;*

*(II) Grant Liens and Superpriority Administrative Expense Claims to DIP Lenders; (III) Modify Automatic Stay; and (IV) Grant Related Relief* [ECF No. 527] (the "**Final DIP Order**"). Schedule 2.12 of the loan agreement governing the DIP Facility (as defined in the Final DIP Order) (the "**Equity Conversion Schedule**") imposes several conditional thresholds on the Debtors, which the Debtors must meet before they can file the Chapter 11 Plan and solicit votes thereon.  Specifically, sections 3(i) and 4(i) of the Equity Conversion Schedule require the Debtors to deliver the Initial Valuation Materials and the Final Valuation Materials (both as defined therein) at least fifty days and twenty days, respectively, before filing the Chapter 11 Plan.  Delivery of these Materials requires, among other things, substantial progress in the claims reconciliation and fleet negotiation processes.

12.     In addition, Section 4(i) of the Equity Conversion Schedule requires the Debtors to deliver the Refinancing Qualification Certificate (as defined therein) no fewer than twenty days before filing the Chapter 11 Plan.  This requires the Debtors' investment banker, Rothschild & Co US Inc. and Rothschild & Co Mexico S.A. de C.V., (collectively, "**Rothschild**") to certify that the Debtors either will or will not be able to repay all Outstanding DIP Loans and Outstanding DIP Obligations (both as defined in the Final DIP Order) in full in cash.  In order to make such a certification and otherwise provide the Final Valuation Materials as required under the DIP Documents (as defined in the Final DIP Order), Rothschild has commenced an exit financing marketing process to determine the terms on which the Debtors can raise sufficient debt and/or equity financing to repay all Outstanding DIP Loans and Outstanding DIP Obligations.

13.     The Debtors have accomplished a great deal so far in these Chapter 11 Cases, with an extraordinary amount of consensus.  There has yet to be a matter in these Chapter 11

Cases contested on a substantive basis, despite the complex issues that have arisen, which reflects the concerted and continuous efforts the Debtors have undertaken, and are continuing to undertake, to engage with stakeholders and proactively address issues.  The Debtors are therefore well positioned for the next phase of these proceedings.  But there is certainly plenty more to accomplish, both in order to position the Debtors to emerge with a sustainable balance sheet and in order to achieve the various thresholds needed to file the Chapter 11 Plan, as per the Equity Conversion Schedule.  The months ahead will be focused on many time-consuming tasks, including the continued rationalization of the Debtors' aircraft fleet, complex claims analysis, resolving issues relating to the Debtors' loyalty program, completing the necessary prerequisites to delivering the Initial Valuation Materials and Final Valuation Materials, and formulating the Debtors' Chapter 11 Plan.  All this will be done in concert with various stakeholders, including the Creditors' Committee, Apollo Management Holdings, L.P. ("**Apollo**"), and the Ad Hoc Group (as defined in the Final DIP Order).

## **Basis for Relief Requested**

14.    Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case.  If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan.  Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause."  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").  For the reasons described in this Motion, the Debtors respectfully submit that "cause" exists to extend the Exclusive Periods.

15.     It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of the particular case.  *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).  Although the Bankruptcy Code does not define "cause," courts have construed the term in consideration of the Bankruptcy Code's underlying legislative history. *See, e.g.*, *In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D. N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3344) (noting that the exclusive periods under section 1121 of the Bankruptcy Code are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated"); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989) (examining the applicable legislative history and noting that "[t]he 'cause' standard referred to in section 1121 has been referred to as a general standard that allows the Bankruptcy Court 'maximum flexibility to suit various types of reorganization proceedings.'" (citations omitted)).  The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to allow a debtor time to negotiate with its creditors, win support for its plan, and ultimately its survival as a business.  H.R. Rep. No. 95-595 at 231–32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (indicating that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement."); *see also Geriatrics Nursing Home v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home)*, 187 B.R. 128, 131–32 (D. N.J. 1995) ("The exclusivity period affords the debtor the opportunity to negotiate the settlement of its debts … by proposing and soliciting support for its plan of reorganization without interference—in the form

of competing plans . . .”); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003) (noting that so long as the debtors give the court “no reason to believe that they are abusing their exclusivity rights … [a] requested extension of exclusivity … should be granted”).

16.     In determining whether to extend a debtor's exclusive periods, courts consider a variety of factors to assess the totality of circumstances affecting whether or not “cause” exists, including:

> (a)  the size and complexity of the case;
> (b)  the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
> (c)  the existence of good faith progress toward reorganization;
> (d)  the fact that the debtor is paying its bills as they come due;
> (e)  whether the debtor has demonstrated reasonable prospects for filing a viable plan;
> (f)  whether the debtor has made progress in its negotiations with creditors;
> (g)  the amount of time that has elapsed in the case;
> (h)  whether creditors are prejudiced by the extension;
> (i)  whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and
> (j)  the existence of an unresolved contingency.

*See In re Adelphia Communs. Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D. N.J. 2002); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same); *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' “substantial efforts … to stabilize their business and develop a viable exit strategy”).  Any one of these factors may constitute sufficient grounds for extending a debtor's exclusive periods.  *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

17.    Not all of the above factors are relevant to every case and the court considers only the relevant factors to determine whether cause exists to grant an exclusivity extension. *See In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (holding that size and complexity of the chapter 11 case is sufficient cause to extend exclusivity); *In re Express One Int'l*, 194 B.R. at 100–01 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors).

a.    *The Chapter 11 Cases Are Large and Complex, and the Debtors Require Sufficient Time to Negotiate a Chapter 11 Plan in Good Faith*

18.    Courts regularly consider the size and complexity of a chapter 11 case a determining factor of whether a court should grant an extension of the exclusive periods. *See, e.g.*, *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause" can include an "unusually large case") (citation omitted); *In re Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *see also* H.R. Rep. No. 95-595, at 231–32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for multiple extensions of exclusivity. *See, e.g.*, *In re Express One Int'l*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone).

19.    The Debtors are acutely aware of the costs and risks associated with operating in chapter 11, but given the complexity and importance of the issues they face, additional time is

9

needed to both fulfill the Equity Conversion Schedule's requirements and formulate a confirmable Chapter 11 Plan.  As the Court is aware, the Debtors are Mexico's leading airline in terms of market share, fleet size, and network, offering passengers a full-service experience to eighty-four global destinations.  Prior to the pandemic, the Debtors offered 573 daily passenger flights on average, servicing forty-two Mexican destinations; twenty destinations in the United States and Canada; fifteen in Central and South America, and the Caribbean; five in Europe; and two in Asia.  The Debtors held a 24.3% share of the Mexican domestic market and a 15.8% share of the Mexican international market (measured by passenger traffic) during 2019.  During that period, the Debtors transported 20.7 million passengers.

20.     Moreover, the circumstances surrounding these Chapter 11 Cases are unprecedented.  The global pandemic, the resulting economic crisis, and ongoing uncertainty, especially in the aviation industry, create a perfect storm of challenges for the Debtors' business. Mexican domestic capacity was reduced by as much as 75% and international capacity was reduced by as much as 90%.  As a result, the Debtors have, for large periods of these Chapter 11 Cases, only required a portion of its aircraft to be available for current operations.  However, customer demand in certain markets is starting to pick up.  This confluence of developments makes fleet planning, as well as the related development of (i) Initial Valuation Materials and Final Valuation Materials and (ii) the structuring of the Chapter 11 Plan, extraordinarily complex and time consuming.  In addition, the ongoing and uncertain nature of the pandemic and economic fallout complicates the Debtors' ability to develop the Initial Valuation Materials and Final Valuation Materials while developing a path for exiting chapter 11, as the Debtors must plan for an untold number of potentialities, including those based on historic, unprecedented market conditions.  As such, the Chapter 11 Plan drafting and related negotiations, while

ongoing, are complex and time-consuming.  While the Debtors are confident in their ability to ultimately formulate a value-maximizing Chapter 11 Plan, which all stakeholders could support, that effort would certainly be aided by a further extension of the Exclusive Periods.

21.     Furthermore, the Debtors' conduct in these Chapter 11 Cases demonstrates their good-faith desire to successfully reorganize in chapter 11 and emerge as a strong, leading airline. The Debtors have been working diligently and in good faith with the Creditors' Committee, Apollo, the Ad Hoc Group, claimants, lessors, vendors, unions, employees, and a host of other stakeholders to reach a value-maximizing settlement for all.  Accordingly, each of the first three factors listed above weighs in favor of the Court granting the relief sought herein.

*b.  The Debtors Pay Their Bills as They Come Due*

22.     The Debtors continue to make timely payments on account of their undisputed post-petition obligations and, as applicable, in accordance with the terms of the relevant settlements negotiated during the pendency of these cases.  As such, this factor also weighs in favor of the Court extending the Exclusive Periods.

*c.  A Relatively Short Amount of Time Has Elapsed in the Chapter 11 Cases*

23.     Just over eleven months have elapsed in the Chapter 11 Cases, which is not long for cases of this size and complexity.  *See, e.g.*, *In re Purdue Pharma L.P.*, No. 19-23649-RDD (Bankr. S.D.N.Y. March 1, 2021), ECF No. 2433 (extending exclusive periods a fourth time, to eighteen months after the petition date); *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 22, 2020), ECF No. 2186 (extending exclusive periods a fourth time, to more than sixteen months after the petition date).

24.     Furthermore, large airline bankruptcies, even in economically stable times, are extremely complex.  Especially in that context, relatively little time has elapsed.  *See, e.g.*, *In re Avianca Holdings S.A.* ("**Avianca**"), No. 20-11133-MG (Bankr. S.D.N.Y. April 14, 2021), ECF

No. 1534 (granting a third 120-day extension of the exclusive periods); *In re AMR Corp.*, No. 11-15463-SHL (Bankr. S.D.N.Y. March 27, 2013), ECF No. 7284 (granting a sixth extension of the exclusive periods, to eighteen months after the petition date); *In re Frontier Airlines Holdings, Inc.*, No. 08-11298-RDD (Bankr. S.D.N.Y May 20, 2009), ECF No. 853 (granting a third extension of the exclusive periods, to eighteen months after the petition date); *In re Delta Airlines, Inc.*, No. 05-17923-ASH (Bankr. S.D.N.Y. March 15, 2007), ECF No. 5225 (granting a fourth extension of the exclusive periods, to 625 days after the petition date); *In re Northwest Airlines Corp.*, No. 05-17930-ALG (Bankr. S.D.N.Y. June 29, 2006), ECF No. 2959 (granting a third extension of the exclusive periods, to 488 days after the petition date); *In re UAL Corp.*, No. 02-48191-ERW (Bankr. N.D. Ill. December 16, 2005), ECF No. 14136 (granting an eleventh extension of the exclusive periods, to almost thirty-nine months after the petition date). Specifically, as of the date of this Motion, neither *In re LATAM Airlines Group S.A.*, No. 20-11254-JLG (Bankr. S.D.N.Y.) nor Avianca have filed a chapter 11 plan of reorganization despite each filing for chapter 11 protection over a month before the Debtors, which reflects the inherent complexity of the issues needing to be resolved in large Latin American airline bankruptcies. Accordingly, an extension of the Exclusive Periods is appropriate.

###### d. The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Chapter 11 Plan and Are Making Progress in Negotiations with Creditors

25.     As stated above, the approval of the DIP Facility, together with the Debtors' comprehensive settlement agreements, will position the Debtors for a successful reorganization in chapter 11.   However, the DIP Facility provides additional steps that must be completed before filing a plan of reorganization as compared to other cases without this type of unique convertible DIP Facility.   The Debtors continue to diligently negotiate with additional parties in interest to complete these additional steps and are making progress with various other

constituencies toward reaching agreements that will further aid their reorganization efforts. Accordingly, these factors weigh in favor in further extending the Exclusive Periods.

> ### e. The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands and Creditors Are Not Prejudiced by the Extension

26.    Continued exclusivity will permit the Debtors to continue diligently working with many various creditor groups and other parties in interest. As stated above, the Debtors have made meaningful progress thus far in these Chapter 11 Cases, with the overwhelming majority of the Debtors' efforts receiving broad creditor support. The Debtors are seeking an extension of the Exclusive Periods to preserve and build upon the aforementioned progress made to date by securing adequate time to develop a Chapter 11 Plan. Accordingly, this factor also weighs in favor of granting the relief requested herein.

> ### f. The Debtors Still Must Resolve Several Important Contingencies

27.    As discussed above, the Equity Conversion Schedule imposes several crucial contingencies on the Debtors before they can file a Chapter 11 Plan, including the delivery of valuation materials and the Refinancing Qualification Certificate. The Debtors have been diligently working to resolve these contingencies ever since the Final DIP Order was entered, but there remains a good deal of work to do before these issues are satisfactorily resolved. Specifically, while the Debtors have reached comprehensive labor agreements with each of their unions, the Debtors still need to finalize the rationalization of their fleet before being ready to structure a successful plan of reorganization. Such fleet analysis is a complicated endeavor in good times, and even more so now when demand is difficult to project.

28.    Moreover, the Debtors believe that it is sensible to continue their efforts to reach agreements—including continuing to seek resolution of issues relating to the Debtors' loyalty program—with additional significant creditors and counterparties before proposing a Chapter 11

Plan.  These circumstances preclude the Debtors from filing a Chapter 11 Plan at this juncture, but the Debtors are continually committed to progress to a point where such a filing will be feasible.  Accordingly, this factor also weighs in favor of the relief requested herein.

### The Relief Requested Should Be Granted

29.    The Debtors faced four major tasks: (i) obtaining DIP financing, (ii) rationalizing the Debtors' labor force, (iii) rationalizing the Debtors' fleet, and (iv) formulating a Chapter 11 Plan.  Despite arriving at satisfactory resolutions of the former two issues and making significant headway on the latter pair, and despite the Debtors' significant progress in a host of other areas, much work remains, given the size and complexity of these Chapter 11 Cases, as well as the requirements imposed by the Equity Conversion Schedule.  The Debtors believe it is in the best interests of the Debtors' estates and all parties in interest to seek an extension of the Exclusive Periods as described herein to permit the Debtors to proceed toward the goal of a confirmable Chapter 11 Plan that maximizes the value of the Debtors' estates to the benefit of all parties in interest.  The Debtors' progress to date has been achieved in no small part due to the breathing room provided by chapter 11.  The Debtors believe that maintaining their exclusive right to file and solicit votes on a plan is critical to their ability to complete a value-maximizing and fruitful process.

30.    Furthermore, courts in this jurisdiction have granted relief similar, or more extensive, to that requested herein.  *See, e.g.*, *In re Avianca Holdings S.A.*, No. 20-11133-MG (Bankr. S.D.N.Y. April 14, 2021), ECF No. 1534 (granting a third 120-day extension of the exclusive periods); *In re Aurora Commercial Corp.*, No. 19-10843-SCC (Bankr. S.D.N.Y May 5, 2020), ECF No. 433 (extending the exclusive periods for a fourth time, for a total extension of 360 days); *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 22, 2020), ECF Nos. 699, 1329, 1706, 2186 (providing for an initial extension of the exclusivity

periods by 180 days, a second extension of 120 days, and two additional extensions of sixty days each); *In re China Fishery Group Ltd. (Cayman)*, No. 16-11895-JLG (Bankr. S.D.N.Y. Dec. 28, 2017), ECF No. 933 (extending the exclusive periods a fourth time, to more than seventeen months after the petition date); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007-RDD (Bankr. S.D.N.Y. Nov. 13, 2015), ECF Nos. 1838, 2637, 3015 (first extension of 131 days, second extension of 124 days, and third extension of 185 days); *In re Residential Capital LLC*, Case No. 12-12020-MG (Bankr. S.D.N.Y. Sept. 11, 2012), ECF Nos. 1413, 2489, 3007, 3102, 3440, 3634, 3919 (granting four exclusivity extensions for a total of 464 days).

## Notice

31.     Notice of this Motion will be provided to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://dm.epiq11.com/aeromexico) and (b) any person or entity with a particularized interest in the subject matter of this motion (the "**Notice Parties**").  The Debtors respectfully submit that no further notice is required.

## No Prior Request

32.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed

forms of order, substantially in the form attached hereto, granting the relief requested herein, and

such other and further relief as the Court deems just and proper.

Dated:    June 8, 2021
          New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        By:    */s/ Timothy Graulich*

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile:  (212) 701-5800
                                        Marshall S. Huebner
                                        Timothy Graulich
                                        James I. McClammy
                                        Stephen D. Piraino (admitted *pro hac vice*)

                                        *Counsel to the Debtors*
                                        *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **GRUPO AEROMÉXICO, S.A.B. de C.V.,** *et al.,* | **Case No. 20-11563 (SCC)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**ORDER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE
A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Upon the motion (the "**Motion**")[2] of Grupo Aeroméxico, S.A.B. de C.V. and its affiliates

that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), for

entry of an order (this "**Order**"), pursuant to section 1121(d) of the Bankruptcy Code, extending

the Exclusive Periods, as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding under 28

U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it

appearing that no other or further notice need be provided; and the Court having reviewed the

Motion and held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and

the Court having determined that the legal and factual bases set forth in the Motion and at the

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Exclusive Filing Period is hereby extended by 122 days through and including Monday, October 25, 2021.  The Exclusive Solicitation Period is hereby extended by 120 days through and including Wednesday, December 22, 2021.

3.      This Order is without prejudice to the Debtors' right to seek further extension of the Exclusive Periods.

4.      The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    New York, New York
                _____, 2021

                                                            _____
                                                            THE HONORABLE SHELLEY C. CHAPMAN
                                                            UNITED STATES BANKRUPTCY JUDGE