Philip D. Anker  
Lauren R. Lifland  
**WILMER CUTLER PICKERING**  
  **HALE AND DORR LLP**  
7 World Trade Center  
250 Greenwich Street  
New York, NY 10007  
Telephone: (212) 230-8800  
philip.anker@wilmerhale.com  
lauren.lifland@wilmerhale.com  

Benjamin W. Loveland (admitted *pro hac vice*)  
**WILMER CUTLER PICKERING**  
  **HALE AND DORR LLP**  
60 State Street  
Boston, MA 02109  
Telephone: (617) 526-6641  
benjamin.loveland@wilmerhale.com  

*Counsel to Invictus Global Management, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GRUPO AEROMÉXICO, S.A.B. DE C.V. *et al.*, | Case No. 20-11563 (SCC) |
| Debtors.[1] | (Jointly Administered) |

**INVICTUS GLOBAL MANAGEMENT, LLC'S OBJECTION**
**TO CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION**
<u>**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**</u>

---

[1] The Debtors in these cases, along with each Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; and Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...................................................................................................1

**BACKGROUND** .........................................................................................................................2

**ARGUMENT**................................................................................................................................2

I.    The Plan Cannot Be Confirmed Because It Fails To Satisfy § 1129(a)(10) Of The Bankruptcy Code As To Air Cargo ......................................................................................2

    A.    Invictus's Vote Should Be Respected..................................................................3

    B.    Section 1129(A)(10) Is Not Satisfied Simply Because the De Minimis Air Cargo Convenience Class Accepted the Plan ............................................................5

    C.    The Plan Lacks an Accepting Impaired Class for Each Debtor..............................8

II.    The Plan Cannot Be Confirmed as to Air Cargo Because It Fails to Satisfy § 1129(b) of the Bankruptcy Code.........................................................................................10

**CONCLUSION** ........................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
　860 F.2d 94 (3d Cir. 1988)..................................................................................................4

*Czyzewski v. Jevic Holding Corp.*,
　137 S. Ct. 973 (2017)........................................................................................................11

*In re Heritage Org., L.L.C.*,
　376 B.R. 783 (Bankr. N.D. Tex. 2007)...........................................................................4, 5

*In re Owens Corning*,
　419 F.3d 195 (3d Cir. 2005), *as amended* (Aug. 23, 2005), *as amended*
　(Sept. 2, 2005), *as amended* (Oct. 12, 2005), *as amended* (Nov. 1, 2007).........................9

*In re Philippine Airlines*,
　No. 21-11569-SCC (Bankr. S.D.N.Y. Sept. 6, 2021) .........................................................5

*In re Pine Lake Vill. Apartment Co.*,
　19 B.R. 819 (Bankr. S.D.N.Y. 1982)..................................................................................7

*In re S & W Enter.*,
　37 B.R. 153 (Bankr. N.D. Ill. 1984) ...................................................................................6

*In re Trib. Co.*,
　464 B.R. 126 (Bankr. D. Del.), *on reconsideration in part on other
　grounds*, 464 B.R. 208 (Bankr. D. Del. 2011), and *aff'd sub nom. In re
　Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), *aff'd sub nom. In re Trib.
　Co.*, 972 F.3d 228 (3d Cir. 2020).......................................................................................8

*Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re
　Ion Media Networks, Inc.)*,
　419 B.R. 585 (Bankr. S.D.N.Y. 2009).............................................................................11

*JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props. Inc. (In re
　Transwest Resort Props., Inc.*,
　881 F.3d 724 (9th Cir. 2018) ............................................................................................10

*JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re
　Charter Commc'ns)*,
　419 B.R. 221 (Bankr. S.D.N.Y. 2009).............................................................................10

### STATUTES

11 U.S.C. § 1122............................................................................................................................6, 7

11 U.S.C. § 1125 ............................................................................................................. 3, 5, 8-9

11 U.S.C. § 1129 .................................................................................................................. *passim*

**OTHER AUTHORITIES**

Timothy E. Graulich, *Substantive Consolidation—A Post-Modern Trend*, 14 AM.
    BANKR. INST. L. REV. 527 (2006) ......................................................................................9

Invictus Global Management, LLC ("Invictus"), on behalf of certain funds or accounts managed or advised by it, submits this objection (the "Objection") to confirmation of the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 2293] (the "Plan").

## PRELIMINARY STATEMENT[2]

1. Invictus holds general unsecured claims against three of the Debtors, all of which are operating companies: Aerovías de México, S.A. de C.V. ("Aerovías"); Aerolitoral, S.A. de C.V. ("Aerolitoral"); and Aerovías Empresa de Cargo, S.A. de C.V ("Air Cargo"). Invictus joins in, and incorporates by reference, the objections to confirmation filed by the Official Committee of Unsecured Creditors (the "UCC" and the "UCC Objection") and the Ad Hoc Group of Opco Creditors (the "Ad Hoc Group" and the "Ad Hoc Group Objection"). Invictus writes separately to address briefly two issues that render the Plan unconfirmable in light of the rejection of the Plan by the class of general unsecured claims for Air Cargo (the "GUC Air Cargo Class").

2. First, the Plan fails to satisfy § 1129(a)(10) of the Bankruptcy Code. Section 1129(a)(10) provides that a plan that impairs any class of claims must be accepted by at least one class of claims impaired by the plan. Only one creditor in the GUC Air Cargo Class, Invictus, voted on the Plan, and it voted to reject the Plan. The Debtors therefore lack an accepting impaired class for Air Cargo, rendering the Plan unconfirmable.

3. Second, the Plan fails to satisfy § 1129(b) of the Bankruptcy Code. Section 1129(b) provides that a plan cannot be confirmed over the rejection of an impaired class of unsecured claims if any value flows to a claim or interest junior to the rejecting class. It is

---

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Objection.

uncontroverted that the GUC Air Cargo Class is impaired by the Plan, and Invictus has rejected the Plan.  The Plan nevertheless provides value to Air Cargo's direct equity holders, Aerovías and Aeroliteral, and to its indirect parent, Grupo Aeroméxico, S.A.B. de C.V. ("Aeroméxico")—indeed, it treats those entities' equity interests in Air Cargo as unimpaired, permitting them to retain that entire interest.  And the Plan, in turn, provides for value to flow to certain of Aeroméxico's equity holders.  These violations of the absolute priority rule also render the Plan unconfirmable.

## BACKGROUND

4. The Court is already familiar with Invictus's purchase of claims from Independencia and Invictus's votes, both in respect of the claims it purchased from Independencia and other claims, to reject the Plan.  As such, Invictus will not repeat that background here.  Invictus instead incorporates by reference the background section of its *Response to Debtors' Motion to Enforce the Court's Order Authorizing Entry into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia*, [ECF No. 2391] (the "Response to the Motion to Enforce").

## ARGUMENT

I. **The Plan Cannot Be Confirmed Because It Fails To Satisfy § 1129(a)(10) Of The Bankrutpcy Code As To Air Cargo**

5. The Plan does not satisfy § 1129(a)(10) because it lacks a valid accepting class of impaired Air Cargo creditors.  Section 1129(a)(10) permits confirmation of a plan that impairs a class of creditors only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."  The only creditor that voted in the GUC Air Cargo Class was Invictus, and it voted to reject the Plan.  *See Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC Regarding Voting*

2

*and Tabulation of Ballots Cast on the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 2464] ("Sullivan Decl."). As discussed below, neither the Plan's acceptance by the small convenience class for Air Cargo, nor its acceptance by classes of creditors with claims against other Debtors, can overcome this defect. Thus, there is no accepting impaired class of Air Cargo claimants sufficient to satisfy the requirements of § 1129(a)(10).

        A.        **Invictus's Vote Should Be Respected**

6.        As the Court is well aware, the Debtors have filed a motion seeking an order deeming Invictus' votes to reject the Plan in respect of the claims it acquired from Independencia to be just the opposite—votes to accept the Plan.[3] To Invictus' knowledge, no court has ever granted such relief, requiring a creditor that has decided to reject a plan instead to vote to accept based on a lock-up agreement allegedly mandating that it do so that the debtor solicited after the debtor filed for bankruptcy but before it obtained and disseminated a court-approved disclosure statement. Invictus has already set forth why, in its view, such relief is barred by § 1125(b) and why, in any event, the Plan is not a "Complying Plan" within the meaning of the agreement apparently signed by Independencia and, therefore, Invictus cannot be compelled to vote for the Plan in any event. Rather than repeat those points here, Invictus incorporates the arguments set forth both in writing in its Response to the Motion to Enforce and orally at the hearing on that motion held on January 14, 2022.[4]

---

[3] *See Debtors' Motion to Enforce the Court's Order Authorizing Entry into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* [ECF No. 2356] (the "Motion to Enforce").

[4] Invictus reserves all rights with respect to the Debtors' Motion to Enforce, including its right to appeal any adverse decision.

3

7. Invictus does wish, however, briefly to put the issue in the context of this Objection to confirmation of the Plan. Invictus is not seeking to designate or otherwise to challenge the vote of any other creditor on the Plan. It is simply arguing that it, as the assignee of Independencia, can vote to reject the Plan. Put differently, it is arguing that the Debtors are not entitled, by specific performance, to enforce a post-petition, but pre-disclosure-statement, lock-up agreement that did not purport to give Independencia (or its assignee) any right to change its mind if, once it received a court-approved disclosure statement, it decided it no longer could support the Plan.

8. In addition to the cases already cited, Invictus directs the Court's attention to *In re Heritage Org., L.L.C.*, 376 B.R. 783 (Bankr. N.D. Tex. 2007). There, Judge Houser declined to designate the vote of a co-proponent of the plan, who had agreed to a voting lockup with respect to an earlier, substantially different plan. In so holding, Judge Houser stressed that the creditor wanted to vote to accept the new, revised plan; that it was not doing so because it had been locked-up before it had received a court-approved disclosure statement; and that, indeed, the plan had been substantially modified as compared to the term sheet that had been the subject of the lockup and that it was now a co-proponent of the new plan. Judge Houser cited with approval Judge Walrath's decisions in *NII Holdings* and *Stations Holding*, *id.* at 793-94, that Invictus has also cited, but distinguished them because, in those cases, "the locked-up creditor could not 'reconsider its preliminary decision' to vote in favor of the plan after receiving adequate information, and the locked-up creditor was stripped of the Bankruptcy Code's protection against the harm caused by solicitation without court-approved, adequate information." *Id.* at 793 (citing *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 102 (3d Cir. 1988)). In contrast, the

creditor in *Heritage* not only could reconsider its preliminary decision but had in fact done so, deciding to support and indeed become a co-proponent of a different plan.

9. So, too, the plan support agreements in *Philippines Airline* that this Court mentioned at the hearing last week were largely executed pre-petition (and, therefore, did not implicate § 1125(b)) and, in any event, included broad termination provisions allowing the creditor to change its "preliminary decision" to support the plan if it wanted to do so. Here, the purported lockup agreement with Independencia included no such provisions.[5]

10. To the extent that the Debtors are now arguing that the GUC Air Cargo Class has voted to accept the Plan, they are necessarily seeking specific performance of a supposed lockup agreement with no termination protections that they solicited after filing for bankruptcy, but before obtaining and disseminating a court-approved disclosure statement. Under § 1125(b), they are not entitled to that relief as a matter of law. The GUC Air Cargo Class must be deemed to have voted to reject the Plan.

    **B.    Section 1129(A)(10) Is Not Satisfied Simply Because the De Minimis Air Cargo Convenience Class Accepted the Plan**

11. The Plan includes a convenience class for Air Cargo, Class 4(d) (the "<u>Air Cargo Convenience Class</u>"). According to the voting report submitted by the Debtors, that class voted

---

[5] *Compare* Debtor's Motion for Entry of an Order Authorizing the Debtor to Assume, and Perform Under, Restructuring Support Agreements ¶ 41, *In re Philippine Airlines, Inc.*, No. 21-11569-SCC (Bankr. S.D.N.Y. Sept. 6, 2021) [ECF No. 19] ("the RSAs include numerous and broad termination events . . . and each party to the RSAs will be released from its obligation to vote in favor of the Proposed Plan upon termination of the applicable RSA"), *and* Notice of Filing of Restructuring Support Agreements, Exhibit A-1 at 14-15 (§ 5.01), *In re Philippine Airlines*, No. 21-11569-SCC (Bankr. S.D.N.Y. Sept. 6, 2021) [ECF No. 23], (specifying more than 20 termination events) *with Debtors' Reply to Invictus's Response and in Further Support of Motion to Enforce the Court's Order Authorizing Entry into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* [ECF No. 2423], Ex A-2 (Agreement with Independencia specifying no circumstances allowing Independencia to reconsider its preliminary decision to support a plan proposed by the Debtors).

5

to accept the Plan, though the creditors who did vote to accept have allowed claims totaling less than $75,000. *See* Sullivan Decl., Ex. A.

12. The Air Cargo Convenience Class cannot serve as the sole accepting impaired class for Air Cargo over the objection of the GUC Air Cargo Class. Rather than repeat the arguments on this front made by the UCC and the Ad Hoc Committee, Invictus incorporates by reference those arguments as set forth in the UCC Objection and the Ad Hoc Committee Objection.

13. Invictus simply adds the following: At the hearing last week on the Debtors' Motion to Enforce, Invictus contended that the Plan is not a "Complying Plan" under the agreement executed by Independencia because, by its terms, that agreement purports to obligate Independencia to vote to accept only a plan that treats Independencia the same as all "other general unsecured claimants"[6] and, in fact, the Plan provides vastly disparate treatment for different unsecured claims, including materially superior treatment for convenience class claims as compared to that for other unsecured claims against the same Debtor. In response, the Debtors and the Court suggested that convenience classes are often created purely for "administrative convenience." In fact, § 1122(b) permits deviation from the otherwise governing classification standards of § 1122(a) only where "reasonable and necessary for administrative convenience." As such, courts have been chary to allow a convenience class, supposedly created only for administrative convenience, instead to have the substantive effect of creating the required impaired accepting class. *See, e.g.*, *In re S & W Enter.*, 37 B.R. 153, 161 (Bankr. N.D. Ill. 1984) ("[T]he manipulation of unsecured claims, interests, or classes for the sole purpose of

---

[6] *See Debtors' Reply to Invictus's Response and in Further Support of Motion to Enforce the Court's Order Authorizing Entry into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* [ECF No. 2423], Ex A-2 at Clause Fourth (last paragraph under "FOURTH").

6

complying with the voting requirement of Section 1129(a)(10) shall not be tolerated. Of particular note in this case is the impropriety of engaging in such manipulation under the guise of promoting administrative convenience under Section 1122(b).").

14. These concerns are especially apt here, and there are particular reasons in this case not to deem § 1129(a)(10) satisfied merely because the Air Cargo Convenience Class accepted the Plan. The Plan provides that holders of claims in that convenience class, each of whose claims could be as large as $350,000, will receive nearly twice as substantial a recovery as holders of claims against the same Debtor but that are in the GUC Air Cargo Class, a class whose aggregate claims total only around $1,300,000. *See Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Grupo Aeroméxico, S.A.B. de C.V. and its Affiliated Debtors* at 6-7 [ECF 2294] (projecting that creditors in the GUC Air Cargo Class will receive only 16-17 cents on the dollar, while creditors in the Air Cargo Convenience Class will receive 29-30 cents on the dollar). And, as noted, less than $75,000 in claims in the Air Cargo Convenience Class voted to accept the Plan, while the vast majority of claimants in that class did not even vote. *See Supplemental Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC, Regarding Voting and Tabulation of Ballots Cast on the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 2473], Ex. A (showing that only 9% of convenience class claims voted); *see also In re Pine Lake Vill. Apartment Co.*, 19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982) ("The debtor may not ignore the rejection of its plan by the holder of a large unsecured deficiency claim simply because the debtor designated a specially preferred separate class of easily created trade creditors whose acceptances may be readily obtainable by offering them more than the disfavored deficiency claim holder.

7

Manifestly such treatment of unsecured claims is unfairly discriminatory within the meaning of 11 U.S.C. § 1129(b)(1).").

### C. The Plan Lacks an Accepting Impaired Class for Each Debtor

15. That classes with claims against Debtors beside Air Cargo voted to accept also does not make the Plan confirmable. *See In re Trib. Co.*, 464 B.R. 126, 183 (Bankr. D. Del.), *on reconsideration in part on other grounds*, 464 B.R. 208 (Bankr. D. Del. 2011), and *aff'd sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), *aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020) (holding that § 1129(a)(10) requires an accepting impaired class from each debtor under a joint plan absent consent or substantive consolidation).

16. In *Tribune*, Judge Carey explained that, although jointly administered debtors often file what appears to be a single plan, "each joint plan actually consists of a separate plan for each Debtor," unless the Debtors are substantively consolidated. 464 B.R. at 182. Judge Carey recognized that chapter 11 cases of affiliated debtors are often jointly administered for the convenience of all involved. But he stressed that, as a matter of law, this administrative convenience is *not* the same as substantive consolidation, and under the plain language of § 1129(a)(10), does not relieve a joint plan proponent from the requirement of obtaining the acceptance of an impaired class for *each* debtor. *Id.* at 183.

17. Invictus understands that both the UCC and the Ad Hoc Committee are addressing this issue as well. Rather than repeat their arguments, Invictus incorporates them by reference.

18. Invictus merely wishes to emphasize a single point that, again, relates to the Debtors' Motion to Enforce. As the Court knows, Invictus argues in response to that motion that the Plan is not a "Complying Plan" within the meaning of the Independencia agreement (and therefore the supposed voting lockup could not be enforced against Invictus even in the absence

8

of § 1125(b)) because (among other factors) it provides disparate treatment for holders of claims with recourse against different Debtors and for different holders of claims against the same Debtor, Aerovías, based on whether or not they also have recourse against Aeroméxico. In response, the Debtors have stressed the differences among the Debtors and their assets and liabilities. Indeed, these asserted differences among the Debtors provide the fundamental legal basis for why the Plan treats claims against different Debtors so differently—with, for example, holders of general unsecured claims against Aeroméxico projected to recover 84-85% and holders of "double-dip" claims against both Aeroméxico and Aerovías to receive 100%, while holders of unsecured claims (other than convenience class claims) are to receive as little as 3% (claims against Aeroliteral) and no more than 15-17% (claims against Aerovías and Air Cargo).[7] If this justification of "corporate separateness" for the separate classification and vastly different treatment of claims against the different Debtors suffices for disparate treatment purposes under the Code, then it surely cannot be that the Debtors can do an about-face, ignore the differences, and act as if they have been "substantively consolidated" for purposes of satisfying § 1129(a)(10). *See, e.g., In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (substantive consolidation is an "extreme" remedy "of last resort," and courts must respect corporate separateness "absent compelling circumstances," and it is not justified by "[m]ere benefit to the administration of the case"), *as amended* (Aug. 23, 2005), *as amended* (Sept. 2, 2005), *as amended* (Oct. 12, 2005), *as amended* (Nov. 1, 2007); Timothy E. Graulich, *Substantive Consolidation—A Post-Modern Trend*, 14 AM. BANKR. INST. L. REV. 527, 529 (2006) (substantive consolidation "often runs contrary to many settled creditor rights (including voting, distribution and priority rights))."

---

[7] *See Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Grupo Aeroméxico, S.A.B. de C.V. and its Affiliated Debtors* at 6-7 [ECF 2294].

9

19. Especially in this case under these circumstances, accounting for votes on a per-plan, rather than per-debtor basis, would improperly blur the lines of corporate separateness. Just as some creditors may be limited in their recoveries by those lines, so too debtors are restricted from treating separate entities as a consolidated enterprise to ease their burden in obtaining the accepting impaired classes necessary for confirmation (especially where, as here, they do so for some purposes but not others). Conveniences such as joint administration and the filing of joint plans are just that—conveniences—and they must not diminish the substantive rights of any party without their consent. "[N]owhere is it written that some creditors must sacrifice their economic and legal rights to make chapter 11 reorganizations more efficient." Graulich, *supra*, at 529. The analysis in *Tribune* is persuasive, and the Court should conclude as Judge Carey did that § 1129(a)(10) requires an accepting class on a per-debtor, rather than on a per-plan basis where, as here, the entire Plan is predicated on maintaining the corporate separateness of the different Debtors and not engaging in substantive consolidation.[8]

20. In short, there is no accepting impaired class for Air Cargo, rendering the Plan unconfirmable under § 1129(a)(10).

## II. The Plan Cannot Be Confirmed as to Air Cargo Because It Fails to Satisfy § 1129(b) of the Bankruptcy Code

21. The Plan also does not satisfy § 1129(b) of the Bankruptcy Code because it distributes value to interests junior to those of an impaired objecting class. The absolute priority rule mandates that "a priority-violating plan [] cannot be confirmed over the objection of an

---

[8] The few cases in which courts have deemed § 1129(b) satisfied where there was there was no accepting class at a particular debtor, but there was an accepting class at a different debtor, are distinguishable. In *JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props. (In re Transwest Resort Props., Inc.)*, 881 F.3d 724, 729 (9th Cir. 2018), the Ninth Circuit did not consider the lack of substantive consolidation because the appellant had failed to raise the issue in the courts below, thus waiving it. *JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009), the court approved of the per-plan approach on the specific facts of that case because the debtors had been "managed . . . on an integrated basis," unlike the Debtors here.

10

impaired class of creditors." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) (citing 11 U.S.C. § 1129(b)).  There is no dispute that the GUC Air Cargo Class is impaired by the Plan, *see* Plan art. VI § 6.1(c), and as discussed above, it has rejected the Plan.

22.     The Plan nevertheless provides value to Air Cargo's direct (Aerovías and Aeroliteral) and indirect (Aeroméxico) equity holders.[9]  Indeed, the Plan reinstates and renders unimpaired the Intercompany Interests in Class 7, which includes 100% of the equity in Air Cargo held by these other Debtors.  Plan art. III § 3.2(q) [44–45].  This produces a straightforward violation of the absolute priority rule: the senior claims of creditors in the GUC Air Cargo Class are impaired by the Plan, while the junior, equity interests in Air Cargo are unimpaired.

23.     The Debtors seek to explain away this violation by asserting that the shareholders of Air Cargo are retaining their equity interests purely "for the purposes of administrative convenience."  Plan art. III § 3.7.  But the absolute priority rule is just that—absolute; there is no "administrative convenience" (or other) exception set forth in § 1129(b). [10]

24.     In any event, as the Debtors admit, the reason the Plan provides for Aerovías and Aeroliteral to retain their equity interests in Air Cargo (and for Aeroméxico, in turn, to retain its

---

[9] Invictus' understanding that Air Cargo's direct shareholders are Aerovías and Aeroliteral is based on Appendix E to the Disclosure Statement. which appears to show that Aerovías owns 75% of Air Cargo and Aeroliteral owns 25%.  On the other hand, the first-day declaration filed in these cases appears to indicate that Aerovías owns 100% of Air Cargo.  *See Declaration of Ricardo Javier Sánchez Baker in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* ¶ 18 [ECF No. 20].  But no matter which document is accurate, the violation of the absolute priority rule remains the same.

[10] To the extent that courts have permitted debtors to retain intercompany interests for administrative convenience, they have done so where, unlike here, the retained interest "does not have any economic substance and . . . does not enable any junior creditor or interest holder to retain or recover any value under the Plan."  *Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.)*, 419 B.R. 585, 601 (Bankr. S.D.N.Y. 2009).  In *Ion Media*, the creditor that objected to the preservation of intercompany interests was out of the money entirely, whereas the first lien lender that constituted the fulcrum security consented to the retention of the intercompany interest.  *Id.* at 601 n.22.  Here, in contrast, the fulcrum class at Air Cargo is the GUC Air Cargo Class, and it has voted to reject the Plan; moreover, junior equity holders of the Debtors' ultimate parent, Aeroméxico, are receiving substantial value under the Plan.

11

equity interests in Aerovías and Aeroliteral) is to "benefit" the parties that will, under the Plan, receive the "New Stock" in the Debtors' ultimate parent, Aeroméxico. Plan art. III § 3.7. Here, those parties include existing equity holders of Aerovías and Aeroliteral: Delta and certain Mexican shareholders, both of which have substantial representation on the company's board. Those ultimate equity holders are themselves receiving distributions in respect of their equity holdings, adding to the violations of the absolute priority rule. Invictus understands that the UCC and the Ad Hoc Committee are addressing these distributions and responding to the Debtors' arguments that these equity holders are not receiving anything of value in respect of their equity interests, but instead are receiving hundreds of millions of dollars in value supposedly for entirely independent reasons. Invictus incorporates those points as set forth in the UCC Objection and the Ad Hoc Committee Objection.

## **CONCLUSION**

25.    For the reasons set forth above, Invictus respectfully requests that the Court deny confirmation of the Plan and direct the parties to resume negotiations for a truly consensual plan of reorganization.

January 18, 2022            Respectfully submitted,

       */s/ Philip D. Anker*
Philip D. Anker
Lauren R. Lifland
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
philip.anker@wilmerhale.com
lauren.lifland@wilmerhale.com

Benjamin W. Loveland (admitted *pro hac vice*)
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6641
Facsimile: (617) 526-5000
benjamin.loveland@wilmerhale.com

*Counsel to Invictus Global Management, LLC*